1  TORIN A. DORROS, SBN 191228
   tdorros@dorroslaw.com
2  **DORROS LAW**
   11766 Wilshire Boulevard, Suite 1170
3  Los Angeles, California 90025
   Telephone: (310) 997-2050
4  Facsimile:  (310) 496-1320

5

6  D. JUSTIN HARELIK, SBN 236710
   Justin@westgatelaw.com
   MATTHEW A ROSENTHAL, SBN 279334
7  matt@westgatelaw.com
   **WESTGATE LAW**
8  15760 Ventura Boulevard, Suite 1100
   Encino, California 91436
9  Telephone: (818) 200-1495
   Facsimile: (818) 574-6022
10
   *Attorneys for Plaintiffs,*
11 *MOISES GARCIA GUILLEN*

12                **UNITED STATES DISTRICT COURT**

13               **CENTRAL DISTRICT OF CALIFORNIA**

14 MOISES GARCIA GUILLEN,
   individually and for all those similarly      Case No.:  _____
15 situated,
                                                 Judge:  _____
16                         Plaintiff,

17            v.                                  **CLASS ACTION COMPLAINT**

18 CORNERSTONE FINANCIAL                          1. RICO: Mail Fraud; Wire Fraud
   SERVICES; DAVID STONE dba                      2. CIVIL CONSPIRACY
19 CORNERSTONE FINANCIAL                          3. CONVERSION
   SERVICES; DAVID STONE, an                      4. VIOLATION OF UCC AND
20 individual; JOHN C BEERY, JR. dba                 CALIFORNIA COMMERCIAL CODE
   JCB LEASING & FINANCE; JOHN C.                 5. BREACH OF CONTRACT
21 BEERY, JR., an individual; and DOES            6. FRAUD AND NEGLIGENT
   1 THROUGH 10                                      MISREPRESENTATION
22                                                7. VIOLATION OF B&P § 17200
                           Defendants.            8. DECLARATORY JUDGMENT
23
                                                     **JURY TRIAL DEMANDED**
24

25

26        Plaintiff, MOISES GARCIA GUILLEN ("Plaintiff" or "Guillen") hereby

27 alleges against Defendants CORNERSTONE FINANCIAL SERVICES; DAVID

28 STONE dba CORNERSTONE FINANCIAL SERVICES; DAVID STONE, an

individual (collectively "Cornerstone"); JOHN C BEERY, JR. dba JCB LEASING & FINANCE; JOHN C. BEERY, JR., an individual (collectively "JCB"); and DOES 1 THROUGH 10 (individually "Defendant" and collectively "Defendants").

# I.  __INTRODUCTION__

1.     This action arises out of Defendants' individual wrongful actions and pattern of practice and conduct related to Defendants' financing practices, collection practices, repossession practices, disposition of collateral practices, and related conduct relative to both Plaintiff Moises Guillen individually and all class members similarly situated as Plaintiff, for whom Plaintiff now also pursues this class action.

2.     Defendants engage in a pattern and practice of conduct that without limitation is directed at (i) pulling in customers or debtors such as Plaintiff through contractual promises and representations that such consumers/debtors will be afforded their statutorily and contractually provided bankruptcy rights such as, without limitation, the right to redeem, reinstate, or otherwise secure the return of repossessed collateral, as well as their rights under the Uniform Commercial Code and related state commercial codes such as the California Commercial Code, when Defendants' knowing intention was, in the case of a debtor/consumer default, to proceed in such a fashion that the consumer/debtor would not be able to take advantage of such bankruptcy or commercial code rights or remedies.

3.     Upon default Defendants would implement a pattern and practice regarding collections, repossession, and disposition of collateral that was/is in violation of debtors' contractual, bankruptcy, commercial code, and other rights.

4.     Defendants would repossess secured collateral and then, without proper notice and not complying with the requirement that all aspects of the process including disposition be commercially reasonable, would immediately purport to sell the collateral in an attempt to circumvent the legal and contractual rights afforded to the debtors, such as the bankruptcy automatic stay, the right to redeem the collateral or have the collateral otherwise turned over to the debtor.

5.     Defendants purport to sell the collateral immediately and then claim that Defendants no longer have any rights in the collateral and thus have no power to turn over the collateral and have no obligation to do so.

6.     Defendants, however engage in such conduct in a manner that is by no means commercially reasonable.

7.     Defendants in fact repossess collateral and then claim to immediately sell the collateral often within hours of repossession.

8.     Moreover although Defendants claim that they have sold the collateral immediately, Defendants in fact have engaged in conduct that would not constitute a valid sale or have purported to sell such collateral to a fictitious entity or buyer, or have not sold or otherwise transferred the collateral at all.

9.     Indeed Defendants have been merely engaging in sham conduct developed and engaged in for the last thirty (30) years to strip debtors/consumers of their legal rights and prevent such debtors from redeeming or otherwise recovering their repossessed collateral.

## II.     PARTIES

10.     Plaintiff, MOISES GARCIA GUILLEN ("Plaintiff" or "Guillen") is an individual residing in Los Angeles County, California.

11.     Upon information and belief, Defendant CORNERSTONE FINANCIAL SERVICES is a business with a principal place of business or primary business address in San Rafael, California and does business, including vehicle and/or truck financing, throughout the State of California and the United States.

12.     Upon information and belief, Defendant DAVID STONE dba CORNERSTONE FINANCIAL SERVICES is a business with a principal place of business or primary business address in San Rafael, California and does business throughout the State of California and the United States.

13.     Upon information and belief, Defendant DAVID STONE, an individual, is a resident and citizen of the State of California residing in Northern California (the

San Francisco Bay Area) and more specifically Plaintiff believes the County of residence to be Marin, County. Upon information and belief, Defendant David Stone, an individual is also the owner of Cornerstone Financial Services, either as a standalone business entity or as a dba.

14. Plaintiff is informed and believe that Defendant JOHN C. BEERY, JR. dba JCB LEASING & FINANCE is a business with its principal place of business or primary business address in Alameda County, California.

15. Plaintiff is informed and believe that Defendant JOHN C. BEERY, JR., an individual, is an individual residing in California with an address of 2415 Mariner Square Drive, Alameda, CA 94501.

16. The true names and capacities of the defendants named. herein as Does 1 through 10, whether individual, corporate, associate, or otherwise, are currently unknown to Plaintiff, and therefore Plaintiff alleges that each of these fictitiously named defendants is responsible in some manner for the events sued upon. Plaintiffs will seek leave of this Court to amend the Complaint to assert the true identities and capacities of the defendants named herein as Does 1 through 10 when such identities and capacities have been ascertained.

17. Plaintiff is informed and believes, and thereon alleges, that at all relevant times, each Defendant was the agent and/or employee of each of the other Defendant and, in doing each of the things herein alleged, was acting within the scope of such agency and/or employment.

## III.  <u>JURISDICTION AND VENUE</u>

18. This case arises out of Defendants' illegal and wrongful repossession of Plaintiffs' vehicle and subsequent wrongful conduct resulting in significant damages and giving rise to, among other claims, claims for violation of the Federal Racketeer Influenced and Corrupt Organizations Act (RICO), Federal Declaratory Judgment Act, Federal Class Action Fairness Act, Uniform Commercial Code, California Commercial Code, and California Business and Professions Code, among other

1    claims.

2        19.    This Court properly has jurisdiction pursuant to 28 U.S.C. §§ 1331 as the

3    action involves a federal question in that the action involves claims arising under

4    federal statute, including, without limitation, the Federal Racketeer Influenced and

5    Corrupt Organizations Act (RICO) - 18 U.S.C. § 1962(c); the Federal Declaratory

6    Judgment Act - 28 U.S.C. §§ 2201-2202; and the Federal Class Action Fairness Act -

7    28 U.S.C. §§ 1332(d), 1453, and 1711-1715.  The Court has supplemental jurisdiction

8    over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

9        20.    This Court has personal jurisdiction over Defendants because

10   Defendants conduct business in the State of California and within this district,

11   including providing banking/commercial vehicle financing services within California

12   and within this district, and other services to California residents.

13       21.    Venue is proper in the district pursuant to 28 U.S.C. § 1391 on either of

14   the following grounds:  (a) a substantial part of the events giving rise to the instant

15   claims for relief and the subject matter thereof occurred in this district, including,

16   without limitation, that Defendants Cornerstone financed Plaintiff's vehicle in this

17   district in California, sent documents to Plaintiffs relative to Plaintiff's vehicle and its

18   financing, payment, and repossession in this district in California, and ordered the

19   repossession of Plaintiff's vehicle in this district in California and that Defendants

20   JCB allegedly purchased Plaintiff's vehicle in this district in California and engaged

21   in other wrongful conduct toward Plaintiff's in this district in California, and that

22   Defendants' conduct caused significant harm and damages to Plaintiff while in this

23   district in California; and (b) Defendants are subject to personal jurisdiction in this

24   district.

### IV.    <u>STATEMENT OF FACTS</u>

<u>Defendants' Cornerstone's Repossession and Purported Sale of Plaintiff's Vehicle</u>

27       22.    Late in the day, after 6:00 p.m., on Thursday, March 5, 2015, Defendants

28   repossessed Plaintiff's vehicle *in Los Angeles County*, a 2010 Freightliner Vin

#1FUJGLDR3ASAR2118 ("Truck" or "Vehicle"), allegedly based on Defendants contention that Plaintiff had failed to pay as required under the Truck financing agreement.

23.   The next day, on Friday, March 6, 2015, Plaintiff hired attorney D. Justin Harelik and Westgate Law ("Mr. Harelik") to file a Chapter 13 bankruptcy assigned case #2:15-bk-13465-VZ.

24.   Upon filing Plaintiff's Chapter 13 petition/case, Mr. Harelik emailed a letter providing the bankruptcy case number and proof of full insurance coverage for the Vehicle to Defendants.  The letter and proof of insurance is attached as **Exhibit "1"** and incorporated by reference.

25.   Defendants did not immediately respond to the letter and notice.

26.   On Monday, March 9, 2015, Defendants represented to Plaintiff through Mr. Harelik by email that the Truck had been sold ***the same day it was repossessed, March 5, 2015*** *in Northern California.*  Attached to the email Defendants provided a purported copy of a bill of sale to, and buyer's check from, JCB Leasing & Finance, allegedly confirming the March 5, 2015 sale of Plaintiff's Vehicle.  Defendants' correspondence and the alleged bill of sale and check are attached as **Exhibit "2"**.

27.   For absolute clarity, as is allowed under the rules of pleading, Plaintiffs will be forwarding at least two potentially conflicting or inconsistent theories, (a) that the alleged sale was not in compliance with the applicable laws including without limitation the UCC and California Commercial Code, and (b) that the alleged sale in fact never occurred or was nothing more than a sham transaction.

28.   However, even though Defendants contended that they sold Plaintiff's Truck on March 5, 2015, by letter dated March 6, 2015, the ***day after*** Defendants contend they sold Plaintiff's Truck, Defendants specifically informed Plaintiff that Defendants were making a "final demand for immediate payment" regarding the Truck.  See Defendants' March 6, 2015 letter to Plaintiff titled, "AFTER REPOSSESSION: DEMAND FOR PAYOFF", attached as **Exhibit "3"** ("After Repo

1    Letter").

2        29.    The After Repo Letter itemizes charges for which Defendants were

3    seeking payment.  Such charges included the full outstanding amount on the loan, and

4    repossession related fees and costs.  Indeed, even though Defendants contend that the

5    Truck was sold on March 5, 2015, the After Repo Letter demands payment for at

6    least two (2) days of storage for March 5 and 6, 2015 and also claimed the right to

7    continuing costs such as future storage fees.

8        30.    In support of Defendants' Motion to Dismiss the adversary action,

9    Defendants submitted two declarations under oath.  Strikingly neither declaration

10   specifically stated that the Truck was sold prior to the date of the bankruptcy or even

11   stated the date of the sale.  This information was intestinally omitted.  Plaintiff

12   pointed this fact out directly to Defendants in Plaintiff's Opposition, yet interestingly

13   or tellingly, Defendants purposely avoided the issue.  Indeed the declarations

14   provided in conjunction with their Reply brief again specifically did not state the date

15   of the purported sale or that the sale occurred prior to the bankruptcy.  Attached as

16   **Exhibit "4"** are Defendants' declarations.  Again in all the declarations submitted to

17   the Court such information was intentionally omitted.

18       31.    Based upon Defendants' failure to declare under oath in the first

19   declaration submitted—that submitted with their Motion to Dismiss—the date of the

20   sale, Plaintiff's counsel conducted research into the purported sale.  Upon such

21   research it was determined that (a) there is/was no public record of the dba JCB

22   Leasing & Finance; (b) the purported address of JCB Leasing & Finance listed on the

23   alleged purchase check was in fact an address that has been owned by Defendants

24   Cornerstone for more than thirty (30) years; and (c) as of the date of the hearing on

25   the Motion to Dismiss, some several months subsequent to the alleged sale, DMV

26   records showed no transfer of title or other record referencing JCB Leasing &

27   Finance (or John C Beery) related to Plaintiffs Vehicle.  Attached as **Exhibit "5"** is

28   Plaintiff's counsel's declaration.

**CLASS ACTION COMPLAINT**

32.     Significantly, it now appears that Defendants may be attempting to backtrack and cover their mistakes to, ex post facto, try to create facts to support their position.   Apparently in July and August of 2015, months subsequent to Plaintiff providing evidence to the Bankruptcy Court that there was no public record of any company JCB Leasing & Finance, low and behold two publications were filed claiming that a person named John C Beery, Jr. was doing business as JCB Leasing & Finance as of May 1, 2005.   Attached as **Exhibit "6"** are copies of the Alameda County paper public notices.   Significantly, such filings or notices in and of themselves highlight that there was no prior dba filing for JCB Leasing & Finance

33.     Plaintiff of course questions the veracity of the public notice, including whether such entity does exist, and/or if it does exist the initial date of doing business, and/or the actual date by which the entity can legally claim it was doing business under such name.   With that said the notice and purported claim and identification of JCB Leasing & Finance provides Plaintiff with alternate theories of liability as is alleged herein.

34.     During Plaintiff's counsel initial investigation Plaintiff's counsel did contact John Beery Yachts, which has the identical address now listed as JCB Leasing & Finance's address— 2415 Mariner Square Drive, Alameda, Alameda County, CA 94501.   However upon inquiry into JCB Leasing & Finance, Plaintiff's counsel was informed that they had never heard of any such company.   See Exhibit "5", ¶ 14.

35.     Defendants conduct was nothing more than a sham—that the alleged sale either never occurred at all or was conducted with a wholly fictitious person or entity or conducted in another illegal or wrongful manner with the purposeful intent of essentially stripping debtors/consumers of their contractual, statutory, bankruptcy, and other rights or remedies.

36.     Even assuming arguendo that the purported purchaser does exist and that Defendants and such purchaser did attempt to sell the Vehicle on March 5, 2015, the

8

alleged sale was in no way compliant with the applicable laws and regulations, including without limitation the UCC and California Commercial Code. The purported transaction/sale of the collateral was not conducted in a commercially reasonable fashion nor in compliance with the other relevant regulations and statutes. Moreover title was not legally transferred as of the date of the bankruptcy or even months later. The sale, to the extent it actually took place or was attempted, was void or voidable based upon the Defendants' failure to adhere to the requisite rules, regulations, and statutes, including without limitation the applicable UCC and Commercial Code sections.

37.     Defendants are subject to and must adhere to State, Federal, and Common Law consumer protection laws, credit reporting laws, and collections and repossession laws, among other laws and regulations related to Defendants' business and operations. Accordingly, Defendants are subject to and must adhere to the various requirements and obligations of the UCC, including without limitation, UCC Article 9 Part 6, and the various related and associated California Commercial Code counterparts.

38.     The After Repo Letter also provided the payoff amount of approximately $80,000 of which Plaintiff intended to pay in full in his Chapter 13 reorganization plan.

39.     Therefore, the filing of Plaintiff's Chapter 13 bankruptcy was an appropriate remedy to Defendants' demand for payoff as stated in the March 6, 2015 letter.

40.     On March 12, 2015, Plaintiff's counsel sent a formal written Demand for Turnover to Plaintiff.  The Demand for Turnover is attached as **Exhibit "7"**.

41.     The letter was sent via email to another representative for Defendants, Mr. Jesus Castro.  Mr. Castro opened the email with the letter attached.  The email "read receipt" is attached as **Exhibit "8"**.

42.     Nevertheless Defendants failed to return Plaintiff's Vehicle to Plaintiff

**CLASS ACTION COMPLAINT**

and have refused and continue to refuse to turn over Plaintiff's Truck to Plaintiff and/or to take any action to ensure that the Truck is properly returned to Plaintiff.

43.    Among other damages, Plaintiff has suffered the loss of a lucrative load hauling contract because of Defendants' actions.

44.    Furthermore, Plaintiff's brother, Maximo Garcia ("Maximo"), used his commercial vehicle as collateral for Plaintiff's loan with Defendants.

45.    Maximo's vehicle technically does not comply with the current vehicle emission laws implemented by California State Assembly in 2014.    However, Maximo's vehicle was granted an exemption to continue operating because of Plaintiff's vehicle.

46.    The new emission standards of 2014 permitted a non-compliant vehicle to operate in conjunction with a vehicle in compliance.    The use and operation of certain collateral for the loan, namely Plaintiff's brother's truck, was contingent upon the use and operation of Plaintiff's vehicle.    Defendants' conduct wiped out the necessary connection or tie between Plaintiff's Truck and Plaintiff's brother's truck thereby resulting in the inability to legally use and operate Plaintiff's brother's vehicle.    Without the availability, use, operation, and tie to Plaintiff's Truck, the income generating potential and value of Plaintiff's brother's vehicle was significantly depleted if not entirely eviscerated.    Both Plaintiff and Plaintiff's brother derived income and other benefits from the concurrent and/or joint (as well as individual) availability, use, and operation of both vehicles.

47.    Thus as a result of Defendants' wrongful conduct Plaintiff has lost substantial income and suffered other significant damages as both his Vehicle and his brother's vehicle could no longer be used for business and to generate income.

48.    Furthermore, due to Defendants' wrongful conduct, both Plaintiff and his brother suffered substantial emotional distress and anxiety that Maximo's vehicle would be repossessed and sold immediately, as well.    He is and was fearful for the loss of his only source of income.

**CLASS ACTION COMPLAINT**

49.     Indeed, on or about Friday, April 17, 2015, Maximo's fears became reality. Defendants repossessed Maximo's vehicle and likely sold or attempted to sell the vehicle already in a similar wrongful fashion as Defendants did relative to Plaintiff's Truck.

50.     Indeed, Defendants specifically represented to Plaintiff's counsel that they have been conducting business this way for over 30 years, namely repossessing vehicles and then wrongfully either (a) immediately selling them to strip the vehicle owner/debtor the ability to legally redeem the vehicle as permitted and required under the law, or (b) falsely contending that the vehicle was legally sold to again strip the debtors of their legal rights, or (c) engaging in an illegal or sham transaction to create the fiction that the vehicle was sold when such vehicle was either not sold or not transferred in a legal fashion.

51.     As the result of Defendants' wrongful actions, Plaintiff lost a lucrative hauling contract and now, Plaintiff's brother is in violation of the new, stricter emission laws and thus cannot operate his vehicle to generate income.

52.     Defendants' wrongful conduct was conducted intentionally, knowingly, and willfully, and/or with wanton disregard of the applicable laws and regulations and applicable and relevant creditor duties and obligations and debtor rights and has caused damages to both Plaintiff and Plaintiff's brother.

53.     Defendants' wrongful conduct was negligent and has caused damages to both Plaintiff and Plaintiff's brother.

54.     The loss of Plaintiff's livelihood has caused an undue burden on him and his family.  The loss of his brother's livelihood only compounds that burden on the entire family.

## RICO Conduct

### RICO I – Cornerstone Defendants and Does 1 to 10

55.     Defendants Cornerstone financed Plaintiff's purchase of his Vehicle. During that process Defendants provided Plaintiff documents related to the financing,

the terms of such financing, Defendants' services, and otherwise.   One such document was the relevant financing contract.   Upon information and belief Defendants have also financed vehicles for the class members in and out of California thus affecting interstate commerce.

56.   The Cornerstone Defendants, including without limitation, David Stone, an individual, and Cornerstone Financial Services, engaged in the wrongful conduct together or in connections with one another relative to the wrongful conduct and illegal scheme.

57.   By the financing agreement Defendants represented to Plaintiff and other class members that they would be afforded their statutory, UCC/Commercial Code, bankruptcy and other rights and remedies if and to the extent the Plaintiff and/or other class members were to default on the financing agreement.   Without limitation, Defendants specifically represented that any private or public sale would be conducted in a commercially reasonable fashion.

58.   However Defendants knew or should have known that such representations were false and made such representation intentionally to deceive Plaintiff and the class members.   Indeed, Defendants specifically stated to Plaintiff's counsel that the manner in which Defendants acted toward Plaintiff relative to the repossession and alleged sale of Plaintiff's Vehicle was how Defendants had been doing business for the last 30 years.

59.   Defendants made such representations knowing that it was their long standing pattern and practice to purportedly repossess the debtor's vehicle and then immediately sell (or create a fiction that the vehicle was sold) to deprive the debtor of his/her bankruptcy and other rights as directly contemplated by the financing agreement.   Thus Defendants made such representations knowing that they could not be true based upon Defendants' long standing pattern and practice of repossessing and purportedly immediately selling collateral prior to the date that any debtor could file for bankruptcy or otherwise obtain the redemption or turnover of the collateral.

60.     Moreover, Defendants engaged in further acts of misrepresentation and mail and/or wire fraud in that Defendants subsequently sent via electronic mail to Plaintiff through representatives of Plaintiff statements that Plaintiff's vehicle had been sold the day it was repossessed and included purported copies of a bill of sale and purchase check.  However Defendants made such representations knowing that such were false.  Indeed research revealed that there was no public record of the purported buyer and the alleged buyer's address listed on the check is in fact an address that has been owned by Defendants (not the buyer) for more than thirty years.  Such misrepresentation and communication by electronic mail/wire took place on March 9, 2015.

61.     Further Defendants sent to Plaintiff a March 6, 2015 After Repo Letter falsely contending or falsely making it appear that Defendants maintained possession of the vehicle and that Plaintiff could obtain possession of the vehicle by paying off the demanded amount.  However this letter is in direct contradiction to Defendants' assertions and representations that allegedly the vehicle had been sold prior to the date of the After Repo Letter.

62.     Therefore, at minimum, Defendants have made fraudulent misrepresentations to Plaintiffs and Plaintiff's representatives on multiple occasions—at least two separate occasions, namely March 6, 2015 and March 9, 2015—in furtherance of Defendants' illegal scheme.  Defendants knew and/or should have known such representations were false at the time they were made and that Plaintiff would detrimentally rely on them.  Indeed, Plaintiff did detrimentally rely on such misrepresentations and did suffer damages as a direct result.

63.     Further, Defendants submitted under penalty of perjury declarations to the United States Bankruptcy Court for the Central District of California attesting that Plaintiff's truck in furtherance of, or conformity with, their scheme to defraud Plaintiff and other class members.  Strikingly, in support of Defendant Cornerstone's Motion to Dismiss a single declaration from an employee of Cornerstone Financial

was submitted attesting merely to the assertion that Plaintiff's vehicle was sold subsequent to Plaintiff's alleged default.  The declaration made no representation under oath that the vehicle was sold prior to Plaintiff's filing bankruptcy even though Defendants' motion papers relied heavily on that assertion.  This information was specifically omitted to further Defendants' fraudulent and illegal scheme.  These misrepresentations or omissions were also made via electronic and/or wire means as they were electronically submitted to the Court and electronically served on Plaintiff through Plaintiff's counsel.  The documents and thus misrepresentations were also sent to Plaintiff through counsel via electronic mail as evidenced by the proof of service.

64.    Even after Plaintiff directly pointed out to the Defendants and the Court (a) that the declaration did not state the date of the alleged sale, let alone that the truck was sold prior to the filing of the bankruptcy; (b) that at that time there existed no public record of a JCB Leasing & Finance, the purported purchaser; (c) that the purported check used to purchase the check reflected an address of JCB Leasing & Finance that actually had been owned and is still owned exclusively by the Cornerstone Defendants; and (d) that upon calling the one business in Northern California attached to a person with the name of John Beery, namely John Beery Yachts, Plaintiff's counsel was informed that they had never heard of any company or entity by the name of JCB Leasing & Finance, Defendants never took the position under oath that the Vehicle had been sold prior to the bankruptcy.  Significantly the August 2015 dba filings for JCB Leasing & Finance report the company address to be the identical address of John Beery Yachts.

65.    Moreover, upon information and belief Defendants made intentional misrepresentations and/or omissions to Plaintiff and the Bankruptcy Court in furtherance of their illegal conduct, scheme, and enterprise.  Upon information and belief, Defendants represented to the Court not only that Plaintiff's vehicle had been sold but that it had been sold to an established company JCB Leasing & Finance,

which was entirely separate from Cornerstone.  Defendants went so far as to declare that "the P.O. Box 3482 had both JCB and Cornerstone added on as part of a venture the two companies entered into many years ago, which is no longer in effect.  The box is not used jointly any longer and the companies are no longer engaged in any joint ventures, at present."  Again these representations were made to the Plaintiff and Court via electronic and/or wire means.  These misrepresentations were also made via electronic and/or wire means as they were electronically submitted to the Court and electronically served on Plaintiff through Plaintiff's counsel.  The documents and thus misrepresentations or omissions were also sent to Plaintiff through counsel via electronic mail as evidenced by the proof of service.

66.    However the very check that the purported buyer, JCB, used to allegedly purchase Plaintiff's vehicle and strip him of his various rights and remedies, continued to use that very same address—that check was allegedly used and/or written as of March 5, 2015.  Further, the recent filing of the dba notices by John C. Beery confirm that contrary to the assertions made to the Court and to Plaintiff and other members of the class, there in fact was no legal JCB Leasing & Finance in existence as of the dates Defendants made such representations.

67.    Indeed, upon information and belief, Defendants have consistently and routinely used this JCB entity scheme for many years full well knowing that there did not exist any legal entity JCB Leasing & Finance at the time, whether a dba or other type of legal entity.  In fact upon information and belief, Defendants have been filing false and misleading UCC-1 finance statements for years, causing liens to be placed against class members' collateral, naming a JCB entity as the creditor when no such entity exists.  A UCC search reveals that, since 1999 and possibly as far back as 1994, some party has filed UCC financing statements using the 3482 P.O. Box owned by Cornerstone for a creditor claiming to be a JCB legal company.  The UCC search reveals the use of J.C.B. Leasing & Finance Co., JCB Leasing and Finance, and JCB Leasing & Finance.  Again, until July of 2015 there was no formal public record of

any company or legal entity such as the JCB Leasing & Finance, as Defendants declared existed for years with whom Defendants had engaged in a joint venture for years.  Significantly a great number of the UCC filings appear to be related to the trucking industry—that is the industry specifically which Cornerstone finances.

68.    Defendants knew or should have known that the representations were false and thus made several separate false communications via mail and/or electronic means relative to Defendants pattern and practice and scheme to repossess collateral and engage in conduct that effectively strips the debtor of the debtor's bankruptcy and other rights and remedies resulting in the debtors, such as Plaintiff, to be deprived of their property such as their vehicles, and other rights and remedies to which they have a statutory and contractual right.  Such conduct has directly resulted in damages to Plaintiff and the class members.

69.    Defendants' illegal conduct and misrepresentations were conducted and made in furtherance of Defendants illegal scheme to defraud Plaintiff and the class members.  The multiple communications and misrepresentations were made by means of the mail and/or wire transmission and affected interstate commerce.

70.    As a result of Defendants illegal and wrongful conduct Plaintiff and the class members have suffered significant, substantial and ongoing damages.

RICO II – Cornerstone Defendants, JCB Defendants, and Does 1 to 10

71.    Defendants Cornerstone financed Plaintiff's purchase of his Vehicle. During that process Defendants provided Plaintiff documents related to the financing, the terms of such financing, Defendants' services, and otherwise.   One such document was the relevant financing contract.   Upon information and belief Defendants have also financed vehicles for the class members in and out of California thus affecting interstate commerce.

72.    The Cornerstone Defendants, including without limitation, David Stone, an individual, and Cornerstone Financial Services, and the JCB Defendants, including without limitation John C Beery, Jr., an individual, and JCB Leasing & Finance,

engaged in the wrongful conduct together or in connections with one another relative to the wrongful conduct and illegal scheme.

73.    By the financing agreement the Cornerstone Defendants represented to Plaintiff and other class members that they would be afforded their statutory, UCC/Commercial Code, bankruptcy and other rights and remedies if and to the extent the Plaintiff and/or other class members were to default on the financing agreement.  Without limitation, Defendants specifically represented that any private or public sale would be conducted in a commercially reasonable fashion.

74.    However the Cornerstone Defendants knew or should have known that such representations were false.  Indeed, upon information and belief, for years the Cornerstone Defendants and the JCB Defendants have engaged in a pattern and practice, a scheme, whereby upon the alleged default of a debtor such as Plaintiff and the class members, the Cornerstone Defendants would repossess the secured collateral and then immediately sell or allegedly sell the collateral to the JCB Defendants without any possibility of the transaction or alleged transaction being commercially reasonable or otherwise in compliance with the applicable rules, regulations, and laws.  In fact the Cornerstone and JCB Defendants knew that this practice and scheme would, and purposely engaged in this practice and scheme to, specifically deprive Plaintiff and the class members of their rights and remedies under the law, including without limitation the UCC, Commercial Code, and Bankruptcy Code, among others.

75.    Claiming that Plaintiff defaulted on the financing agreement, the Cornerstone Defendants repossessed Plaintiff's vehicle after 6 pm on March 5, 2015.  According to Defendants Cornerstone, Cornerstone then on that very same day somehow allegedly sold and transferred all ownership rights and title to a purported buyer namely the JCB Defendants.  Significantly, the vehicle was repossessed in Los Angeles but allegedly sold in Northern California.  There is no conceivable way that the sale was "commercially reasonable" as is required of all aspects of the disposition

of secured collateral and as the Cornerstone Defendants represented such sales would be. Significantly, even months after Defendants represented that they had transferred all ownership rights and interest in the vehicle, there existed no DMV records or other records evidencing transfer of title as would have been required for Defendants Cornerstone to truthfully contend that Cornerstone no longer had any rights in the vehicle and that Plaintiff had no recourse to redeem or otherwise secure the return of his vehicle.

76. Moreover, Defendants engaged in further acts of misrepresentation and mail and/or wire fraud in that Defendants subsequently sent via electronic mail to Plaintiff via representatives of Plaintiff statements that Plaintiff's vehicle had been sold the day it was repossessed and included purported copies of a bill of sale and purchase check. However Defendants made such representations knowing that such were false. Indeed research revealed that there was no public record of the purported buyer and the alleged buyer's address listed on the check is in fact an address that has been owned by Defendants (not the buyer) for more than thirty years. Such misrepresentation and communication by electronic mail/wire took place on March 9, 2015.

77. Further Defendants sent to Plaintiff a March 6, 2015 After Repo Letter falsely contending or falsely making it appear that Defendants maintained possession of the vehicle and that Plaintiff could obtain possession of the vehicle by paying off the demanded amount. However this letter is in direct contradiction to Defendants' assertions and representations that allegedly the vehicle had been sold prior to the date of the After Repo Letter.

78. Therefore, at minimum, Defendants have made fraudulent misrepresentations to Plaintiffs and Plaintiff's representatives on multiple occasions—at least two separate occasions, namely March 6, 2015 and March 9, 2015—in furtherance of Defendants' illegal scheme. Defendants knew and/or should have known such representations were false at the time they were made and that

Plaintiff would detrimentally rely on them.  Indeed, Plaintiff did detrimentally rely on such misrepresentations and did suffer damages as a direct result.

79.    Further, in furtherance of, or conformity with, their scheme to defraud Plaintiff and other class members, Defendants submitted under penalty of perjury declarations to the United States Bankruptcy Court for the Central District of California containing, upon information and belief, false statements and/or intentional omissions.

80.    Strikingly, in support of Defendant Cornerstone's Motion to Dismiss a single declaration from an employee of Cornerstone Financial was submitted attesting merely to the assertion that Plaintiff's vehicle was sold subsequent to Plaintiff's alleged default.  However, the declaration notably did not attest that the vehicle was sold prior to the bankruptcy even though Defendants motion papers relied heavily on that assertion.  This information was intentionally omitted to further Defendants' illegal and fraudulent scheme.  These misrepresentations or omissions were also made via electronic and/or wire means as they were electronically submitted to the Court and electronically served on Plaintiff through Plaintiff's counsel.  The documents and thus misrepresentations were also sent to Plaintiff through counsel via electronic mail as evidenced by the proof of service.

81.    Even after Plaintiff directly pointed out to the Defendants and the Court (a) that the declaration did not state the date of the alleged sale let alone that the truck was sold prior to the filing of the bankruptcy; (b) that at that time there existed no public record of a JCB Leasing & Finance, the purported purchaser; (c) that the purported check used to purchase the check reflected an address that had been owned and is still owned exclusively by the Cornerstone Defendants; and (d) that upon calling the one business in Northern California attached to a person with the name of John Beery, namely John Beery Yachts, Plaintiff's counsel was informed that they had never heard of any company or entity by the name of JCB Leasing & Finance, Defendants still never took the position under oath that the vehicle was sold prior to

the filing of the bankruptcy.  These misrepresentations or omissions were also made via electronic and/or wire means as they were electronically submitted to the Court and electronically served on Plaintiff through Plaintiff's counsel.  The documents and thus misrepresentations were also sent to Plaintiff through counsel via electronic mail as evidenced by the proof of service.

82.     Moreover, upon information and belief Defendants made intentional misrepresentations and/or omissions to the Bankruptcy Court in furtherance of their illegal conduct, scheme, and enterprise.  Upon information and belief, Defendants represented to the Court not only that Plaintiff's vehicle had been sold but that it had been sold to an established company JCB Leasing & Finance, which was entirely separate from Cornerstone.  Defendants went so far as to declare that "the P.O. Box 3482 had both JCB and Cornerstone added on as part of a venture the two companies entered into many years ago, which is no longer in effect.  The box is not used jointly any longer and the companies are no longer engaged in any joint ventures, at present."

83.     However the very check that the purported buyer, JCB, used to allegedly purchase Plaintiff's vehicle and strip him of his various rights and remedies, maintained that very same address and such check was allegedly used as of March 5, 2015.  Further, the recent filing of the dba notices by John C. Beery confirm that contrary to the assertions made to the Court and to Plaintiff and other members of the class, there in fact was no legal JCB Leasing & Finance in existence as of the dates Defendants made such representations.

84.     Indeed, upon information and belief, Defendants have consistently and routinely used this JCB entity scheme for many years full well knowing that there did not exist any legal entity JCB Leasing & Finance at the time, whether a dba or other type of legal entity.  In fact upon information and belief, Defendants have been filing false and misleading UCC-1 finance statements for years, causing liens to be placed against class members' collateral, naming a JCB entity as the creditor when no such

entity exists.  A UCC search reveals that, since 1999 and possibly as far back as 1994, some party has filed UCC financing statements using the 3482 P.O. Box owned by Cornerstone for a creditor claiming to be a JCB legal company.  The UCC search reveals the use of J.C.B. Leasing & Finance Co., JCB Leasing and Finance, and JCB Leasing & Finance.  Again, until July of 2015 there was no formal public record of any company or legal entity such as the JCB Leasing & Finance, as Defendants declared existed for years with whom Defendants had engaged in a joint venture for years.  Significantly a great number of the UCC filings appear to be related to the trucking industry—that is the industry specifically which Cornerstone finances.

85.    Upon information and belief these false representations were made via the use of the mail and/or wire transmission in the filing of the UCC-1 financing statements ultimately resulting in liens placed against the relevant debtor(s) and class members depriving them of critical rights and subjecting them to legal obligations that would not have existed but for the false representations in the UCC-1 filings.

86.    Both the Cornerstone and JCB Defendants knew or should have known that the scheme in which they participated would result in Plaintiff being stripped of his ability to take advantage of his redemption and/or other rights under the UCC, Commercial Code, Bankruptcy Code, or otherwise.  Indeed the scheme was implemented by Defendants purposefully and with the specific intent to provide Defendants with a means of avoiding, and depriving Plaintiff of, Plaintiff's legal rights and remedies, including without limitation the right to redemption and to have all aspects of the disposition of Plaintiff's secured collateral conducted in a commercially reasonable manner.  So too was the same or similar for the class members.

87.    The Cornerstone Defendants and JCB Defendants have continually and regularly engaged in this wrongful and illegal pattern and practice, this scheme, relative to the class members thereby directly causing the class members to suffer damages and other continuing and irreparable harm.

88.    Defendants' illegal conduct and misrepresentations or omissions were conducted and made in furtherance of Defendants illegal scheme to defraud Plaintiff and the class members.  The multiple communications and misrepresentations were made by means of the mail and/or wire transmission and affected interstate commerce.

89.    As a result of Defendants illegal and wrongful conduct Plaintiff and the class members have suffered significant, substantial and ongoing damages.

## V.    CLASS ALLEGATIONS

90.    Pursuant to applicable law, Plaintiff brings this action on behalf of a class of all other persons similarly situated. Plaintiff brings this action in a representative capacity to remedy the ongoing unlawful, unfair and fraudulent business practices alleged herein, and to seek redress on behalf of all those persons who have been affected thereby.

91.    Defendants have engaged in a pattern and practice of wrongful and illegal conduct, as alleged above, and including without limitation engaging in conduct violating debtors' rights regarding repossession of collateral, the return or turnover of such collateral, and/or the sale or disposition of such collateral.  Among other wrongful conduct, Defendants have failed to provide, or timely provide, the requisite notices regarding repossessed or taken collateral or personal property, failed to adhere to the legal requirements of the UCC, California Commercial Code, and other laws, regulations, or statutes related to the types of secured transactions in which Defendants are involved such as the financing of commercial vehicles and otherwise with such vehicles or other property as collateral, intentionally and/or with reckless and wanton disregard misrepresented to customers/debtors that Defendants would adhere to such legal requirements, engaging in conduct to strip customers/debtors of their legal rights and remedies under the UCC, Commercial Code, Bankruptcy Code, and/or other laws, engaging in conduct intended to purposefully deceive not only the debtors but also the Courts, purporting to sell

repossessed collateral to non-existent, unregistered, or otherwise illegal persons or entities, filing false, fraudulent, misleading, or illegal public documents, including without limitation UCC financing statements, repossessing collateral and then allegedly disposing of such collateral in a non-commercially reasonable fashion in violation of the applicable laws and in breach of the terms of the applicable contract, and other wrongful conduct alleged herein or related to such wrongful conduct.

92.   The proposed classes consist of

  a. all persons (1) whose vehicle served as collateral pursuant to a financing or security agreement with Cornerstone; and (2) whose vehicle was repossessed by or at the instruction of Cornerstone; and (3) whose vehicle was sold or otherwise disposed of by Cornerstone ("Class I");

  b. all persons (1) whose vehicle served as collateral pursuant to a financing or security agreement with Cornerstone; and (2) whose vehicle was repossessed by or at the instruction of Cornerstone; and (3) whose vehicle was, or was alleged to have been, sold to JCB or any affiliate of JCB ("Class II")[1].

93.   Plaintiff is unable to state the precise number of potential members of the proposed classes because that information is in the possession of Defendants. They are so numerous that joinder of all members would be impracticable. The exact size of the proposed classes, and the identity of the members thereof, will be readily ascertainable from the business records of Defendants.

94.   There is a community of interest among the members of the proposed classes in that there are questions of law and fact common to them that predominate over questions affecting only individual members. These questions, among others,

---

[1] For clarity and for purposes of the class definition JCB should be understood to mean any and all persons or entities affiliated with John C. Beery, Jr.  Plaintiff notes that a nationwide UCC Financing Statement search reveals that it appears that although there has never been any public filing or recording of a corporation, limited liability company, dba, or other entity with a name including JCB Leasing & Finance, it appears that some person or entity has falsely filed numerous UCC finance statements since 1994 identifying the creditor as J.C.B. Leasing and Finance Co., JCB Leasing and Finance Company, JCB Leasing & Finance, and/or JCB Leasing and Finance.

include, inter alia, whether Defendants wrongfully or illegally engaged in conduct, a pattern of practice, or scheme directed at defrauding class members or directed at stripping them of their legal rights and remedies; whether Defendants breached their contractual duties owed to class members; whether Defendants made misrepresentations to class members; whether Defendants' conduct constituted conversion; whether Defendants' conduct constituted conspiracy; whether Defendants engaged in conduct to finance vehicles with the prior knowledge that upon a class member's/debtor's default Defendants would engage in conduct that would prevent the ability of the class members/debtor to exercise his/her legal rights and remedies, including those afforded under the UCC, Commercial Code, and/or Bankruptcy Code; whether Defendants wrongfully or illegally engaged in the conduct alleged above with respect to the class members; whether Defendants violated the RICO Act, the UCC, California Commercial Code, another State's commercial code, and/or other statutes based upon such conduct; whether Defendants acted in an unfair, unlawful, or fraudulent manner; whether Defendants engaged in unfair completion; and whether Plaintiff and the class members are entitled to relief sought. Proof of a common set of facts will establish the liability of Defendants, and the right of each member of the class to recover.

95.    Plaintiffs' claims are typical of those of the class they represent, and Plaintiffs will fairly and adequately represent the interests of the class. Plaintiffs are represented by counsel both competent and experienced to handle this class action and the subject matter of this class action.

96.    A class action is superior to other methods for the fair and efficient adjudication of this controversy. Because the damages suffered by the individual class members may be relatively small compared to the expense and burden of litigation, it would be impracticable and economically unfeasible for class members to seek redress individually. The prosecution of separate actions by the individual class members, even if possible, would create a risk of inconsistent or varying

1  adjudications with respect to individual class members against Defendants, and
2  would establish incompatible standards of conduct for Defendants.

3      97.   Plaintiffs and the class members are entitled to an award of attorney's
4  fees pursuant to contract, statute, case law, regulation, and/or other legal or equitable
5  reasons.

6                    **VI.    CLAIMS FOR RELIEF**

7                      **FIRST CLAIM FOR RELIEF**

8      **Violation of 18 U.S.C. § 1962(c) - Racketeer Influenced and Corrupt**

9       **Organizations Act (RICO) – Mail Fraud and Wire Fraud**

10     **(Plaintiff's Individual and Class Action Claims As Against Defendants**

11            **Cornerstone and Does 1 through 10)**

12     98.   Plaintiff adopts, incorporates by reference, and alleges all prior
13  allegation as if set forth fully herein this claim.

14     99.   Plaintiff specifically incorporates the allegations in the Statement of
15  Facts and RICO I allegations as against Defendants Cornerstone and Does 1 to 10.

16     100.  Defendants are each individually "persons" as defined under the RICO
17  statute.

18     101.  Upon information and belief, for years Defendants have intentionally,
19  knowingly, and/or recklessly engaged in a pattern and practice of wrongful and/or
20  illegal conduct, a scheme, based upon fraudulent statements and representations made
21  via the mail and/or wire transmission to customers and debtors such as Plaintiff and
22  the class members by which Defendants have participated in an enterprise ultimately
23  resulting in illegal profits and other benefits to Defendants and damages to Plaintiff
24  and the class members, including without limitation financial and economic damages,
25  severe emotional distress and other non-economic damages, and the loss or
26  deprivation of their legal and/or equitable rights and remedies such as those provided
27  for under contract, statute, the UCC, Commercial Code, Bankruptcy Code, or
28  otherwise. In fact, Defendants represented to Plaintiff's counsel that Defendants have

conducted business this way for over thirty years.

102.   Defendants engaged in the illegal conduct alleged herein and made the misrepresentations alleged herein in furtherance and conformity with the illegal scheme and enterprise to defraud Plaintiff and class members, knowing that it was Defendants' long standing pattern and practice to purportedly repossess the debtor's vehicle and then immediately sell (or create a fiction that the vehicle was sold) to deprive the debtor of his/her bankruptcy and other rights and remedies as contemplated by the financing agreement and under the law.  Thus Defendants.

103.   On or about, or by documents dated, October 9, 2012, March 5, 2015, March 6, 2015, March 9, 2015 Defendant Cornerstone made certain false representations or omissions to Plaintiff via the mail and/or electronic means and thus by way of, or connected to, interstate commerce.  On or about October 9, 2012 Defendant Cornerstone represented that its customers/debtors such as Plaintiff would be afforded their rights under the UCC, Commercial Code, Bankruptcy Code, and otherwise to the extent such persons were to default on the loan issued to them by Cornerstone Financial.  More specifically, among other representations, on or about October 9, 2012, Defendant Cornerstone represented that the sale or disposition of repossessed collateral would be handled in a commercially reasonable fashion along with the provision of all required notices.  Moreover, Defendant Cornerstone later, by a March 9, 2015 correspondence, represented that Plaintiff's vehicle had been sold the same day as it was repossessed and that Cornerstone no longer had an ownership interest in the vehicle.  Defendant also represented by that March 9, 2015 correspondence and other documents that Plaintiffs vehicle had been sold to a purported buyer company by the name of JCB Leasing & Finance.  By letter dated March 6, 2015 Defendant Cornerstone represented and/or made representations to create a reasonable belief that Plaintiff's vehicle remained in Defendant's possession and was still available for Plaintiff's redemption.  Defendants made these representations and/or omissions knowing that they were false and/or Defendants

**CLASS ACTION COMPLAINT**

1  should have known that such representations and/or omissions were false and such

2  were made with the intention of Plaintiff relying on them, which Plaintiff did in fact

3  do.

4        104.   In conjunction with and/or in furtherance of the illegal scheme

5  Defendants also submitted to the U.S. Bankruptcy Court for the Central District of

6  California declarations that contained material misrepresentations and/or omissions,

7  which thus were made to the Court and Plaintiff.  For example the declarations were

8  submitted purposely not addressing, and omitting, the date of alleged sale even after

9  directly confronted that such was an issue.  The declarations also were submitted

10 alleging that there existed an actual legal company JCB Leasing & Finance, however

11 public records search revealed that no such entity existed and, in fact, the purported

12 entity was not even legally or formally created or recognized until July of 2015, well

13 after Defendants made the misrepresentations to Plaintiff and the Court.

14       105.   In furtherance of the wrongful and illegal business scheme and pattern of

15 practice Defendants David Stone, Cornerstone Financial Services, and Does 1

16 through 10 conspired and acted in concert in a partnership or close association such

17 that they were, or were participating in, an "enterprise" as contemplated by the RICO

18 statute.

19       106.   Moreover, upon information and belief Defendants made intentional

20 misrepresentations and/or omissions to Plaintiff and the Bankruptcy Court in

21 furtherance of their illegal conduct, scheme, and enterprise.  Upon information and

22 belief, Defendants represented to the Court not only that Plaintiff's vehicle had been

23 sold but that it had been sold to an established company JCB Leasing & Finance,

24 which was entirely separate from Cornerstone.  Defendants went so far as to declare

25 that "the P.O. Box 3482 had both JCB and Cornerstone added on as part of a venture

26 the two companies entered into many years ago, which is no longer in effect.  The

27 box is not used jointly any longer and the companies are no longer engaged in any

28 joint ventures, at present."

**CLASS ACTION COMPLAINT**

107.   However the very check that the purported buyer, JCB, used to allegedly purchase Plaintiff's vehicle and strip him of his various rights and remedies, maintained that very same address and such check was allegedly used as of March 5, 2015.   Further, the recent filing of the dba notices by John C. Beery confirm that contrary to the assertions made to the Court and to Plaintiff and other members of the class, there in fact was no legal JCB Leasing & Finance in existence as of the dates Defendants made such representations.

108.   Indeed, upon information and belief, Defendants have consistently and routinely used this JCB entity scheme for many years full well knowing that there did not exist any legal entity JCB Leasing & Finance at the time, whether a dba or other type of legal entity.   In fact upon information and belief, Defendants have been filing false and misleading UCC-1 finance statements for years, causing liens to be placed against class members' collateral, naming a JCB entity as the creditor when no such entity exists.   A UCC search reveals that, since 1999 and possibly as far back as 1994, some party has filed UCC financing statements using the 3482 P.O. Box owned by Cornerstone for a creditor claiming to be a JCB legal company.   The UCC search reveals the use of J.C.B. Leasing & Finance Co., JCB Leasing and Finance, and JCB Leasing & Finance.   Again, until July of 2015 there was no formal public record of any company or legal entity such as the JCB Leasing & Finance, as Defendants declared existed for years with whom Defendants had engaged in a joint venture for years.   Significantly a great number of the UCC filings appear to be related to the trucking industry—that is the industry specifically which Cornerstone finances. Moreover, the filing of these UCC-1 financing statements have been in multiple States and provide for liens applicable nationwide or in multiple States thus affecting interstate commerce.   Thus Defendants' illegal enterprise affects interstate commerce.

109.   Defendants knew or should have known that the representations were false and thus made several separate false communications via mail and/or electronic means relative to Defendants pattern and practice and scheme to repossess collateral

and engage in conduct that effectively strips the debtor of the debtor's bankruptcy and other rights and remedies resulting in the debtors, such as Plaintiff, to be deprived of their property such as their vehicles, and other rights and remedies to which they have a statutory and contractual right.  Such conduct has directly resulted in damages to Plaintiff and the class members.

110.  Defendants engaged in the illegal conduct by way of partnership or other close relationship constituting an enterprise with the goal of illegally stripping debtors such as Plaintiff and the class members of their legal and equitable rights and remedies under contract, bankruptcy code, commercial code, and other laws, regulations, and otherwise, including without limitation redemption rights, turnover rights, and other rights and remedies relative to financed collateral and repossessed collateral.  Indeed Defendants' illegal conduct and enterprise successfully resulted in those goals and resulted in damages to Plaintiff and the class members.

111.  Again, Plaintiff specifically incorporates in this claim the allegations set forth in the RICO I section of the Statement of Facts.

112.  Defendants' illegal conduct and misrepresentations or omissions were conducted and made in furtherance of Defendants illegal scheme to defraud Plaintiff and the class members.  The multiple communications and misrepresentations or omissions were made by means of the mail and/or wire transmission and affected interstate commerce.

113.  As a result of Defendants illegal and wrongful conduct and scheme and enterprise Plaintiff and the class members have suffered significant, substantial and ongoing damages.

114.  Plaintiff and the class members are entitled to the recovery of monetary damages in an amount to be proven at trial.

115.  Defendants conduct was intentional, willful, and/or fraudulent warranting the award of punitive damages.

116.  Plaintiffs are also entitled to statutory damages as well as treble

1 damages.

2                        SECOND CLAIM FOR RELIEF

3        **Violation of 18 U.S.C. § 1962(c) - Racketeer Influenced and Corrupt**

4               **Organizations Act (RICO) – Mail Fraud and Wire Fraud**

5        **(Plaintiff's Individual and Class Action Claims As Against All Defendants)**

6        117.   Plaintiff adopts, incorporates by reference, and alleges all prior

7   allegation as if set forth fully herein this claim.

8        118.   Plaintiff specifically incorporates the allegations in the Statement of

9   Facts and RICO II allegations as against Defendants Cornerstone, JCB, and Does 1 to

10  10.

11       119.   Defendants are each individually "persons" as defined under the RICO

12  statute.

13       120.   Upon information and belief, for years Defendants have intentionally,

14  knowingly, and/or recklessly engaged in a pattern and practice of wrongful and/or

15  illegal conduct, a scheme, based upon fraudulent statements and representations or

16  omissions made via the mail and/or wire transmission to customers and debtors such

17  as Plaintiff and the class members by which Defendants have participated in an

18  enterprise ultimately resulting in illegal profits and other benefits to Defendants and

19  damages to Plaintiff and the class members, including without limitation financial

20  and economic damages, severe emotional distress and other non-economic damages,

21  and the loss or deprivation of their legal and/or equitable rights and remedies such as

22  those provided for under contract, statute, the UCC, Commercial Code, Bankruptcy

23  Code, or otherwise.   In fact, Defendants represented to Plaintiff's counsel that

24  Defendants have conducted business this way for over thirty years.

25       121.   Defendants engaged in the illegal conduct alleged herein and made the

26  misrepresentations alleged herein in furtherance and conformity with the illegal

27  scheme and enterprise to defraud Plaintiff and class members, knowing that it was

28  Defendants' long standing pattern and practice to purportedly repossess the debtor's

vehicle and then immediately sell (or create a fiction that the vehicle was sold) to deprive the debtor of his/her bankruptcy and other rights and remedies as contemplated by the financing agreement and under the law.  Thus Defendants.

122.   On or about, or by documents and/or correspondence dated, October 9, 2012, March 5, 2015, March 6, 2015, March 9, 2015 Defendant Cornerstone made certain false representations or omissions to Plaintiff via the mail and/or electronic means and thus by way of, or connected to, interstate commerce.  On or about October 9, 2012 Defendant Cornerstone represented that its customers/debtors such as Plaintiff would be afforded their rights under the UCC, Commercial Code, Bankruptcy Code, and otherwise to the extent such persons were to default on the loan issued to them by Cornerstone Financial.  More specifically, among other representations, on or about October 9, 2012, Defendant Cornerstone represented that the sale or disposition of repossessed collateral would be handled in a commercially reasonable fashion along with the provision of all required notices.  Moreover, Defendant Cornerstone later, by a March 9, 2015 correspondence, represented that Plaintiff's vehicle had been sold the same day as it was repossessed and that Cornerstone no longer had an ownership interest in the vehicle.  Defendant also represented by that March 9, 2015 correspondence and other documents that Plaintiffs vehicle had been sold to a purported buyer company by the name of JCB Leasing & Finance.   By letter dated March 6, 2015 Defendant Cornerstone represented and/or made representations to create a reasonable belief that Plaintiff's vehicle remained in Defendant's possession and was still available for Plaintiff's redemption.  Defendants made these representations and/or omissions knowing that they were false and/or Defendants should have known that such representations and/or omissions were false and such were made with the intention of Plaintiff relying on them, which Plaintiff did in fact do.

123.   In conjunction with and/or in furtherance of the illegal scheme Defendants also submitted to the U.S. Bankruptcy Court for the Central District of

1   California declarations that contained material misrepresentations and/or omissions,
2   which thus were made to Plaintiff and the Court.  For example the declarations were
3   submitted purposely not addressing, and omitting, the date of alleged sale even after
4   directly confronted that such was an issue.  The declarations also were submitted
5   alleging that there existed an actual legal company JCB Leasing & Finance, however
6   public records search revealed that no such entity existed and, in fact, the purported
7   entity was not even legally or formally created or recognized until July of 2015, well
8   after Defendants made the misrepresentations or omissions to Plaintiff and the Court.

9       124.   In furtherance of the wrongful and illegal business scheme and pattern of
10  practice Defendants David Stone, Cornerstone Financial Services, and Does 1
11  through 10 conspired and acted in concert in a partnership or close association such
12  that they were, or were participating in, an "enterprise" as contemplated by the RICO
13  statute.

14      125.   Moreover, upon information and belief Defendants made intentional
15  misrepresentations and/or omissions to Plaintiff and the Bankruptcy Court in
16  furtherance of their illegal conduct, scheme, and enterprise.  Upon information and
17  belief, Defendants represented to the Court not only that Plaintiff's vehicle had been
18  sold but that it had been sold to an established company JCB Leasing & Finance,
19  which was entirely separate from Cornerstone.  Defendants went so far as to declare
20  that "the P.O. Box 3482 had both JCB and Cornerstone added on as part of a venture
21  the two companies entered into many years ago, which is no longer in effect.  The
22  box is not used jointly any longer and the companies are no longer engaged in any
23  joint ventures, at present."

24      126.   However the very check that the purported buyer, JCB, used to allegedly
25  purchase Plaintiff's vehicle and strip him of his various rights and remedies,
26  maintained that very same address and such check was allegedly used as of March 5,
27  2015.  Further, the recent filing of the dba notices by John C. Beery confirm that
28  contrary to the assertions made to the Court and to Plaintiff and other members of the

1    class, there in fact was no legal JCB Leasing & Finance in existence as of the dates
2    Defendants made such representations.

3         127.   Indeed, upon information and belief, Defendants have consistently and
4    routinely used this JCB entity scheme for many years full well knowing that there did
5    not exist any legal entity JCB Leasing & Finance at the time, whether a dba or other
6    type of legal entity.  In fact upon information and belief, Defendants have been filing
7    false and misleading UCC-1 finance statements for years, causing liens to be placed
8    against class members' collateral, naming a JCB entity as the creditor when no such
9    entity exists.  A UCC search reveals that, since 1999 and possibly as far back as
10   1994, some party has filed UCC financing statements using the 3482 P.O. Box owned
11   by Cornerstone for a creditor claiming to be a JCB legal company.  The UCC search
12   reveals the use of J.C.B. Leasing & Finance Co., JCB Leasing and Finance, and JCB
13   Leasing & Finance.  Again, until July of 22015 there was no formal public record of
14   any company or legal entity such as the JCB Leasing & Finance, as Defendants
15   declared existed for years with whom Defendants had engaged in a joint venture for
16   years.  Significantly a great number of the UCC filings appear to be related to the
17   trucking industry—that is the industry specifically which Cornerstone finances.
18   Moreover, the filing of these UCC-1 financing statements have been in multiple
19   States and provide for liens applicable nationwide or in multiple States thus affecting
20   interstate commerce.  Thus Defendants' illegal enterprise affects interstate commerce.

21        128.   Defendants knew or should have known that the representations were
22   false and thus made several separate false communications via mail and/or electronic
23   means relative to Defendants pattern and practice and scheme to repossess collateral
24   and engage in conduct that effectively strips the debtor of the debtor's bankruptcy
25   and other rights and remedies resulting in the debtors, such as Plaintiff, to be deprived
26   of their property such as their vehicles, and other rights and remedies to which they
27   have a statutory and contractual right.  Such conduct has directly resulted in damages
28   to Plaintiff and the class members.

**CLASS ACTION COMPLAINT**

129.   Again, Plaintiff specifically incorporates in this claim the allegations set forth in the RICO II section of the Statement of Facts.

130.   Defendants engaged in the illegal conduct by way of partnership or other close relationship constituting an enterprise with the goal of illegally stripping debtors such as Plaintiff and the class members of their legal and equitable rights and remedies under contract, bankruptcy code, commercial code, and other laws, regulations, and otherwise, including without limitation redemption rights, turnover rights, and other rights and remedies relative to financed collateral and repossessed collateral.  Indeed Defendants' illegal conduct and enterprise successfully resulted in those goals and resulted in damages to Plaintiff and the class members.

131.   Defendants' illegal conduct and misrepresentations or omissions were conducted and made in furtherance of Defendants illegal scheme to defraud Plaintiff and the class members.   The multiple communications and misrepresentations or omissions were made by means of the mail and/or wire transmission and affected interstate commerce.

132.   As a result of Defendants illegal and wrongful conduct and scheme and enterprise Plaintiff and the class members have suffered significant, substantial and ongoing damages.

133.   Plaintiff and the class members are entitled to the recovery of monetary damages in an amount to be proven at trial.

134.   Defendants conduct was intentional, willful, and/or fraudulent warranting the award of punitive damages.

135.   Plaintiffs are also entitled to statutory damages as well as treble damages.

///

///

///

///

**CLASS ACTION COMPLAINT**

**THIRD CLAIM FOR RELIEF**

<u>Civil Conspiracy</u>

**(Plaintiff's Individual and Class Action Claims As Against Defendants**

**Cornerstone and Does 1 through 10)**

136.   Plaintiff adopts, incorporates by reference, and alleges all prior allegation as if set forth fully herein this claim.

137.   Defendants CORNERSTONE FINANCIAL SERVICES; DAVID STONE dba CORNERSTONE FINANCIAL SERVICES; DAVID STONE, an individual; and DOES 1 THROUGH 10 formed and/or acted as a group, partnership, association, and/or in a relationship such that Defendants agreed upon a common plan, design, or scheme to commit a wrongful, illegal, and/or tortious act by which Plaintiffs and the class members were damaged.

138.   Upon information and belief, Defendants did act in concert together pursuant to an agreement and/or other arrangement.

139.   Defendants committed the following wrongful and/or illegal conduct in connections with such agreement and/or arrangement:

a.   Conversion – Defendants converted Plaintiffs and class members property including, without limitation, their vehicles;

b.   Violations of the California and Uniform Commercial Code relative to the repossession, redemption, turnover, sale, and/or disposition of Plaintiff's and the class members vehicles – as alleged above and below herein, Defendants engaged in conduct which violated the California and Uniform Commercial Code, including without limitation failing to provide proper notices relative to the repossession and/or disposition of collateral, failing to sell or dispose collateral in a commercially reasonable fashion, and otherwise;

c.   Intentional/Fraudulent and Negligent Misrepresentation – as alleged above and below herein, Defendants made material misrepresentations

**CLASS ACTION COMPLAINT**

and/or omissions regarding Plaintiffs and class members rights relative to bankruptcy, redemption, and other rights and remedies stated in the financing contract; Defendants' affording and/or adhering to such rights and remedies; whether Plaintiff's vehicle had been sold and/or whether the vehicle was no longer in Defendants' possession, ownership, or control; the existence of a purchaser of Plaintiff's vehicle; amounts claimed to be owed or owing to Defendants; the existence of a company JCB Leasing & Finance; submitting false and/or misleading declarations to the Bankruptcy Court; submitting false and/or misleading filings and documents regarding UCC-1, including the financing statements themselves; and other material misrepresentations and omissions.

140. Plaintiff specifically realleges the factual and legal allegations plead herein this complaint in support of Plaintiff's and class members' claims for conversion, violation of the California and Uniform Commercial Code, and Fraud and Negligent Misrepresentation.

141. Defendants did indeed commit these tortious, wrongful, and/or illegal acts in conformity and furtherance of their agreement and relationship.

142. As a result of Defendants' wrongful conduct Plaintiff and the class members suffered significant and ongoing damages in an amount to be proven at trial.

143. The intentional and/or fraudulent nature of Defendants' conduct warrants an award of punitive damages.

### FOURTH CLAIM FOR RELIEF

### Civil Conspiracy

### (Plaintiff's Individual and Class Action Claim As Against All Defendants)

144. Plaintiff adopts, incorporates by reference, and alleges all prior allegation as if set forth fully herein this claim.

145. Defendants CORNERSTONE FINANCIAL SERVICES; DAVID STONE dba CORNERSTONE FINANCIAL SERVICES; DAVID STONE, an

individual; JOHN C BEERY, JR. dba JCB LEASING & FINANCE; JOHN C. BEERY, JR., an individual; and DOES 1 THROUGH 10 formed and/or acted as a group, partnership, association, and/or in a relationship such that Defendants agreed upon a common plan, design, or scheme to commit a wrongful, illegal, and/or tortious act by which Plaintiffs and the class members were damaged.

146.   Upon information and belief, Defendants did act in concert together pursuant to an agreement and/or other arrangement.

147.   Defendants committed the following wrongful and/or illegal conduct in connections with such agreement and/or arrangement:

a. Conversion – Defendants converted Plaintiffs and class members property including, without limitation, their vehicles;

b. Violations of the California and Uniform Commercial Code relative to the repossession, redemption, turnover, sale, and/or disposition of Plaintiff's and the class members vehicles – as alleged above and below herein, Defendants engaged in conduct which violated the California and Uniform Commercial Code, including without limitation failing to provide proper notices relative to the repossession and/or disposition of collateral, failing to sell or dispose collateral in a commercially reasonable fashion, and otherwise;

c. Intentional/Fraudulent and Negligent Misrepresentation – as alleged above and below herein, Defendants made material misrepresentations and/or omissions regarding Plaintiffs and class members rights relative to bankruptcy, redemption, and other rights and remedies stated in the financing contract; Defendants' affording and/or adhering to such rights and remedies; whether Plaintiff's vehicle had been sold and/or whether the vehicle was no longer in Defendants' possession, ownership, or control; the existence of a purchaser of Plaintiff's vehicle; amounts claimed to be owed or owing to Defendants; the existence of a company

1    JCB Leasing & Finance; submitting false and/or misleading declarations
2    to the Bankruptcy Court; submitting false and/or misleading filings and
3    documents regarding UCC-1, including the financing statements
4    themselves; and other material misrepresentations and omissions.

5    148.   Plaintiff specifically realleges the factual and legal allegations plead
6    herein this complaint in support of Plaintiff's and class members' claims for
7    conversion, violation of the California and Uniform Commercial Code, and Fraud
8    and Negligent Misrepresentation.

9    149.   Defendants did indeed commit these tortious, wrongful, and/or illegal
10   acts in conformity and furtherance of their agreement and relationship.

11   150.   As a result of Defendants' wrongful conduct Plaintiff and the class
12   members suffered significant and ongoing damages in an amount to be proven at trial.

13   151.   The intentional and/or fraudulent nature of Defendants' conduct
14   warrants an award of punitive damages.

**FIFTH CLAIM FOR RELIEF**

**<u>Conversion</u>**

**(Plaintiff's Individual and Class Action Claims As Against All Defendants)**

18   152.   Plaintiff adopts, incorporates by reference, and alleges all prior
19   allegation as if set forth fully herein this claim.

20   153.   Plaintiff was entitled to possession of and/or redeem Plaintiff's vehicle
21   subsequent to Defendant Cornerstone's repossession of Plaintiff's vehicle, as well as
22   the alleged sale of Plaintiff's vehicle to Defendants' JCB.

23   154.   Defendants Cornerstone did not legally transfer title and ownership
24   interest in Plaintiffs vehicle to any third party, including Defendants JCB prior to
25   Plaintiff filing bankruptcy and/or demanding return of the vehicle.

26   155.   Alternatively to the extent Defendants Cornerstone did attempt to sell
27   the vehicle to a third party, including Defendants JCB, such alleged sale was not
28   conducted in compliance with the UCC and/or California Commercial Code and was

**CLASS ACTION COMPLAINT**

not conducted in a commercially reasonable fashion.

156.   Defendants wrongfully refused and failed and continue to refuse and fail to return Plaintiff's vehicle to Plaintiff even upon multiple demands by Plaintiff.

157.   Defendants wrongfully exercised control over Plaintiff's property, including without limitation Plaintiff's vehicle and Plaintiff's personal property located in the vehicle at the time of repossession of the vehicle.

158.   Plaintiff had a right to possess such vehicle and property.

159.   Defendants intentionally accepted and took possession of such vehicle and property and refused to return the vehicle and property.  Further, in so doing, Defendants prevented Plaintiff from having access to and possessing such vehicle and property.

160.   Plaintiffs did not give permission to Defendants or consent for Defendants to take, hold, and refuse to turn over or release to Plaintiff, Plaintiff's vehicle and property.   Plaintiff further did not give permission or consent for Defendants to interfere with and prevent Plaintiff receiving the benefit of such vehicle and property.

161.   Defendants' wrongful conduct did interfere with Plaintiffs' possession and right to possession of Plaintiffs' vehicle and property.

162.   Defendants conduct constitutes acts of conversion.

163.   Defendants acted knowingly or intentionally when they wrongfully repossessed Plaintiffs' vehicle, allegedly sold the vehicle in a manner in violation of the UCC and Commercial Code, and refused or failed to turn over such vehicle and Plaintiffs' property.

164.   Plaintiffs are entitled to recover damages pursuant to, without limitation, Cal. Com. Code §9625.

165.   As a proximate result of Defendants' conduct, Plaintiffs have suffered damages in an amount to be determined according to proof.

166.   Defendants' conduct was intentional, knowing, malicious, or wrongful

1  and caused, and was a substantial factor in, Plaintiffs' damages and harm incurred
2  and suffered. Punitive damages are thus justified.

3     167. Defendants acted with oppression, fraud or malice, thereby entitling
4  Plaintiffs to punitive damages in an amount according to proof.

5     168. Defendants' corporate officers, directors and/or managing agents are
6  personally guilty of oppression, fraud or malice, had advance knowledge of the
7  unfitness of the employees who acted towards Plaintiffs with malice, oppression, or
8  fraud, employed such employees with conscious disregard for the rights or safety of
9  others, and/or themselves authorized or ratified the wrongful conduct.

10     169. Upon information and belief, Defendants engage and have long engaged
11  in the same conduct toward the class members. Defendants Cornerstone repossess
12  the class members' vehicles and allegedly sell or claim to sell the vehicles to a third
13  party, including Defendants JCB, immediately in an attempt to strip the class
14  members of the ability to redeem or otherwise obtain the return of the vehicle. The
15  purported sales are however not conducted in a commercially reasonable fashion and
16  in fact upon information and belief never actually took place—or the title and
17  ownership is or was never legally transferred. The class members thus remained with
18  a right to possession of the vehicles and Defendants wrongfully refused to return such
19  vehicles and thus intentionally interfered with the class members' right to the
20  possession of the vehicles. As such the class members are entitled to damages as
21  caused by Defendants' conduct, as well as punitive damages.

**SIXTH CLAIM FOR RELIEF**

**<u>Violation of the UCC and California Commercial Code</u>**

**(Plaintiff's Individual and Class Action Claims As Against Defendants**

**Cornerstone and Does 1 through 10)**

26     170. Plaintiff adopts, incorporates by reference, and alleges all prior
27  allegation as if set forth fully herein this claim.

28     171. Plaintiff specifically incorporates each allegation and fact pleaded within

1  the Statement of Facts as if pleaded and set forth in full herein this claim.

2      172.   Defendants' wrongful conduct as alleged herein violated the UCC and
3  California Commercial Code.

4      173.   Without limitation, Defendants have violated UCC §§ 9-600 et seq. and
5  California Commercial Code §§ 9600 et seq.

6      174.   Defendants' following wrongful conduct, without limitation, violated the
7  UCC, California Commercial Code, as well as Plaintiff's and the class members'
8  rights under such statutes and other consumer protection laws: UCC §§ 9-600 et seq.,
9  9-609, 9-610, 9-611, 9-612, 9-613, and 9-625, and California Commercial Code §§
10  9600 et seq., 9610, 9611, 9612, 9613, 9623, 9625, and 9626.

11      175.   Defendants were not in possession of Plaintiff's Truck when it was sold.
12  The truck was repossessed in Southern California, where Plaintiff resides.   The
13  Defendants and Purchaser reside in Northern California.

14      176.   It is Defendants' position that sight unseen, a third party purchaser
15  company, JCB Leasing & Finance, bought the truck and issued a check to
16  Defendants, a check that could not have cleared by the time Defendants notified
17  Plaintiff's Attorney of the alleged sale.  Nor could the check have cleared by the time
18  Plaintiff filed his bankruptcy case.

19      177.   Upon information and belief, at the time of the alleged sale of Plaintiff's
20  vehicle there existed no legal company by the name of JCB Leasing & Finance.

21      178.   Defendant's wrongful conduct, wrongful repossession, improper notice,
22  and other conduct in violation of the cited statutes was neither reasonable nor
23  commercially reasonable and did not comply with the requirements of the various
24  statutes.  Such deprived Plaintiff of his rights, property, and income and resulted in
25  significant damages both monetary as well as non-monetary in nature, including
26  substantial emotional distress.

27      179.   Similarly, upon information and belief, Defendants engage in, and have
28  for a substantial number of years potentially up to 30 years or more engaged in,

conduct that has been directed at stripping, and has in fact stripped, class members of their rights and remedies under the California and Uniform Commercial Code, as did Defendants' conduct relative to Plaintiff.   Such conduct too resulted in damages suffered by the class members.

180.   Without limitation, Defendants' wrongful conduct violated the UCC and California Commercial Code, including without limitation the above referenced sections.

181.   As a result of Defendants' wrongful conduct and violations of the relevant statutes, Plaintiff and the class members are entitled to an award of monetary damages, economic damages and non-economic damages, statutory damages, punitive damages, and attorney's fees.

**SEVENTH CLAIM FOR RELIEF**

**<u>Breach of Contract</u>**

**(Plaintiff's Individual and Class Action Claims As Against Defendants**

**Cornerstone and Does 1 through 10)**

182.   Plaintiff adopts, incorporates by reference, and alleges all prior allegation as if set forth fully herein.

183.   The financing agreement and loan related to the Vehicle was a written contract between Plaintiff and Defendants.

184.   Upon information and belief, Defendants use with the class members the same financing agreement and/or loan documents and/or agreements containing the same language, as those Defendants used with Plaintiff.

185.   The agreement sets forth rights and obligations of the parties, including the duties and obligations owed to Plaintiff and the class members by Defendants.

186.   Among other obligations and duties required of Defendants pursuant to the contract, Defendants were obligated to provide the requisite notices under the law, to conduct any public or private sale of the repossessed collateral/vehicle in a commercially reasonable fashion, and/or provide, recognize, and/or comply with

debtors', such as Plaintiff's and the class members', statutory, commercial code, and bankruptcy rights.

187.   As a result of Defendants' wrongful conduct alleged above and herein, including without limitation, Defendants' conduct related to the repossession of the Vehicle, failure to provide proper notices, failure to return the Vehicle, failure to abide by the applicable laws, failure to conduct the disposition of the collateral/vehicle in a commercially reasonable fashion, and other wrongful conduct, Defendants breached such written contract and Defendants' obligations owed to Plaintiff under such agreement.

188.   Upon information and belief Defendants similarly failed to abide by the applicable laws, failure to conduct the disposition of the collateral/vehicle in a commercially reasonable fashion, and engaged in other wrongful conduct thereby breaching the agreement relative to the class members.

189.   Further, every contract has implied within it a covenant of good faith and fair dealing requiring each party to among other things act fairly to the other party and to honor and abide by the terms of the agreement and act in such a fashion that the terms are not breached so as to allow the other party to receive the benefits of the contract.

190.   Defendants' wrongful conduct breached such implied covenant of good faith and fair dealing and in so doing Defendants interfered with Plaintiff's and the class members' receipt of the benefits of the contract.  Such in itself is also a breach of contract.

191.   Defendants' breaches of contract proximately caused damages to Plaintiff and the class members in an amount to be proven at trial.

///

///

///

///

**EIGHTH CLAIM FOR RELIEF**

**Fraud and Negligent Misrepresentation**

**(Plaintiff's Individual and Class Action Claims As Against Defendants**

**Cornerstone and Does 1 through 10)**

192.   Plaintiff adopts, incorporates by reference, and alleges all prior allegation as if set forth fully herein this claim.

193.   Plaintiff specifically incorporates each allegation and fact pleaded within the Statement of Facts as if pleaded and set forth in full herein this claim.

194.   On or about October 9, 2012 by way of the financing agreement and related documents Defendants represented to Plaintiff that Defendants would provide Plaintiff with the requisite notices under the law, to conduct any public or private sale of the repossessed collateral/vehicle in a commercially reasonable fashion, and/or provide, recognize, and/or comply with debtor's, such as Plaintiff's, statutory, commercial code, and bankruptcy rights.

195.   Similarly, the same representations were made to the class members by way of the financing agreements and documents Defendants provided them.   As alleged previously, upon information and belief, the financing agreements and related documents used by Defendants with Plaintiff are the same as those used by Defendants with the class members and/or contain the same material and controlling language.

196.  Defendants made those representations to Plaintiff and the class members knowing at the time such representations were made that they were false and/or Defendants should have known that they were false at the time made. Alternatively Defendants made such representational to Plaintiff and the class negligently and with reckless disregard as their truth.

197.   Plaintiff, and the class, did rely on such representations to their detriment and in so doing directly suffered damages in an amount to be proven at trial.  The intentional, willful, and knowing nature of Defendants' conduct and representations

1    justify the award of punitive damages.

2        198.   In the current case, Defendants apparently contend that Plaintiff failed to

3    make the required payments pursuant to the financing arrangement or agreement

4    relative to Plaintiff's Truck.  Plaintiff does not concede that Defendants had legal

5    authority or right to repossess the Vehicle under the circumstances—nevertheless

6    Defendants did repossess Plaintiff's Truck.

7        199.   As a result of the repossession Plaintiff was left without the Truck which

8    Plaintiff used to earn income and a livelihood.  Indeed the Truck was his business and

9    he relied on the use of the Truck.

10        200.   Defendants' repossession and other wrongful conduct stripped Plaintiff

11    of the Truck and the use of Truck and thus left Plaintiff without the ability to earn

12    income or a living as Plaintiff previously had.

13        201.   Moreover, prior to Defendants' wrongful conduct and repossession,

14    Plaintiff had secured a new lucrative hauling contract for which Plaintiff was

15    required, or needed, to use his Truck.

16        202.   Additionally, the fact that his brother's vehicle was collateral for his loan

17    added great pressure, stress, and emotional harm on Plaintiff.

18        203.   Plaintiff learned that Defendants had wrongfully allegedly sold the

19    Truck in violation of the relevant consumer protection, collections, repossession,

20    credit, and auto/vehicle finance laws, as well the Uniform Commercial Code and

21    California Commercial Code.  Moreover, Defendants failed and refused, and continue

22    to fail and refuse, to turn over the Truck to Plaintiff and to take any action to assist in

23    ensuring that the Truck is returned to Plaintiff.

24        204.   Indeed, Defendants allegedly, according to Defendants, went so far as to

25    sell Plaintiff's Truck the very same day Defendants repossessed the Truck even

26    though Defendants clearly understood that Defendants legally could not do so.

27        205.   Defendants, in fact, sent Plaintiff the After Repo Letter, dated March 6,

28    2015 specifically stating that it was Defendants' final attempt to collect or secure

1   payment on the loan or debt.

2       206.   Significantly, among other representations made in the letter, the letter

3   clearly indicates that storage fees will continue to be charged.   Also the letter

4   indicates that if payment was not made then Defendants would "continue" to pursue

5   its rights under Section 16 of the financing agreement, the Remedies section.   Such

6   along with the other representations in the letter reasonably led Plaintiff to understand

7   that the Vehicle remained in Defendants' possession and could be redeemed.

8   However, the truth was that contrary to the letter and representations made therein,

9   according to representations made by Defendants, Defendants were apparently or

10  allegedly had sold the Vehicle the day before Defendants sent out that very letter—

11  according to Defendants' representations, Defendants were apparently not even in

12  possession of the Vehicle when Defendants sent the letter to Plaintiff.   Defendants

13  conspicuously omitted the fact that Defendants had allegedly, according to

14  Defendants' representations, already sold the Vehicle as of the date of the After Repo

15  letter and thus too omitted the fact that they allegedly were not in possession of the

16  Vehicle and thus too could not "store" the Vehicle which would be subject to storage

17  fees.

18      207.   In fact, the After Repo Letter went so far as to inform Plaintiff of what

19  Defendants understood Plaintiff's legal rights to be.   Nevertheless Defendants did not

20  even adhere to the very obligations, duties, or requirements expressed, imposed, or

21  highlighted by its own After Repo Letter.

22      208.   Defendants' representations and/or omissions in the After Repo Letter

23  reasonably could be understood that the Plaintiff still had the right to redeem the

24  Vehicle and that Defendants had the Vehicle in its possession.

25      209.   Moreover, on March 9, 2015 Defendants represented to Plaintiff through

26  Plaintiff's counsel that Plaintiff's vehicle had been sold to a third party company,

27  namely JCB Leasing & Finance.   However Defendants knew such representation was

28  false as there existed no such legal entity at the time such representation was made.

Defendants also represented at that time that Defendants no longer had legal title and/or any ownership interest in Plaintiff's vehicle.  Such representation was also made by Defendants knowing such representation was false—indeed as of several months subsequent to the representation there remained no public record or other record evidencing any transfer of title to JCB Leasing & Finance.  That was because there was no such entity.

210.   These statements and/or omissions were made or omitted willfully, knowingly, and intentionally by Defendants at the time made with the intent to deceive Plaintiff and with the intent and understanding that Plaintiff would rely on such statements and/or omissions.

211.   Indeed, Plaintiff did reasonably rely on such representations and/or omissions and such reliance was to Plaintiff's detriment.

212.   Alternatively, Defendants made such misrepresentations and/or omissions with reckless disregard for their truth.

213.   Again, Plaintiff reasonably and justifiably relied on such representations and/or omissions and such reliance was to Plaintiff's detriment.

214.   Defendants' wrongful conduct as alleged herein, including Defendants' misrepresentations and omissions, is and was intentional, willful, wanton, and knowing.  As such Defendants' conduct permits the award of punitive damages.

215.   Alternatively, Defendants' conduct was negligent and/or the result of reckless disregard for the truth and/or implications of the statements and/or omissions.

216.   As a direct and proximate result of Defendants' wrongful conduct Plaintiff suffered damages and irreparable harm and continues to suffer damages and irreparable harm.

217.   As such Plaintiff is entitled to damages in an amount to proven at trial.

218.   The intentional, willful, and knowing nature of Defendants' conduct and representations also justifies the award of punitive damages.

219.   Plaintiff is also entitled to an award of attorneys' fees.

**NINTH CLAIM FOR RELIEF**

**Violation of California Business and Professional Code §§ 17200 et seq. ("UCL")**

**(Plaintiff's Individual and Class Action Claims As Against All Defendants)**

220.   Plaintiff adopts, incorporates by reference, and alleges all prior allegation as if set forth fully herein this claim.

221.   Plaintiff specifically incorporates each allegation and fact pleaded within the Statement of Facts as if pleaded and set forth in full herein this claim.

222.   California Business & Professions Code §§ 17200 et seq., prohibits acts of unfair competition, which means and includes any "unlawful, unfair, or fraudulent business act or practice . . ." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

223.   The "unlawful" prong of the UCL permits a plaintiff to obtain relief from anything that can properly be called a business practice and is also forbidden by law, regardless of whether the law violated provides for a private right of action.

224.   The "unfair" prong of the UCL is intentionally broad to allow courts maximum discretion to prohibit new schemes to defraud.  Outside of the competitor context, lower courts have enunciated differing tests for unfairness under the UCL.  One test balances the victim's harm with the defendant's justification.  Another test analyzes whether the defendant's acts offend a public policy that is tethered to some statutory provision.  Yet another test considers whether the defendant's acts constitute a sharp practice.

225.   The "fraudulent" prong of the UCL looks at whether the relevant segment of the public is likely to be deceived.

226.   Among other wrongful conduct, including all of Defendants' conduct as alleged above herein, Defendants' following specific conduct violates the UCL as such conduct was and is unlawful, unfair, and/or fraudulent:

a.  Failing to provide debtors and others, including Plaintiff, and adhere to

notice requirements regarding default and repossession, including content of notices and timing of notices;

b. Repossessing vehicles or property, including Plaintiff's without adhering to the proper default, notice, and other statutory requirements, as well as the requirements of the financing agreement;

c. Selling repossessed vehicles or property, including Plaintiff's, at any time prior to the time period statutorily afforded to such persons and debtors, including Plaintiff;

d. Selling repossessed vehicles in a manner that is not commercially reasonable and/or violates the UCC and/or California Commercial Code;

e. Repossessing vehicles or property, including Plaintiff's, and then immediately or virtually immediately (in a time frame that is not reasonable or commercially reasonable) selling such vehicle or property;

f. Sending out correspondence, including letters such as the After Repo Letter, to debtors or others, including Plaintiff, which include misrepresentations or omit critical information which would lead such persons, including Plaintiff, to reasonably believe that the vehicle or property could still be redeemed, that Defendant was still in possession of such vehicle or property, and/or that such vehicle or property had not been sold or otherwise disposed of.

g. Failing to provide debtors or others, including Plaintiff, with an accounting;

h. Failing to provide debtors, including Plaintiff, the full and fair opportunity to challenge the default and/or provide evidence that payments had been made, the loan or financing agreement was not in default, payments were current, and/or that any or all of Defendants' contentions and assertions regarding the loan, default, and financing agreement were incorrect, and/or explore and take advantage of other

remedies or solutions, including without limitation, (1) paying off the entire balance; (2) financing the remaining balance through a secondary lending source or (3) filing bankruptcy to reorganize;

i. Selling the vehicle on the same day of repossession and sending out a letter explaining the Plaintiff his rights would easily deceive any member of the general public;

j. Selling the vehicle to a fictitious non-existent entity.

k. Conspiring to strip consumers and debtors of their contractual and bankruptcy rights;

l. Making the misrepresentations and omissions to Plaintiff and the Court as alleged above herein;

m. Submitting false statements to the Bankruptcy Court in furtherance of Defendants' wrongful conduct;

n. Engaging in conduct in violation of RICO as alleged herein; and

o. Other wrongful conduct as alleged herein.

227. California case law has interpreted the "unlawful" prong of Section 17200 to hold illegal a business practice that violates any other law.  Conduct in violation of the laws and statutes, pleaded, alleged, and cited more specifically above in this complaint, including without limitation RICO, the UCC and UCC §§ 9-600 et seq., and California Commercial Code and California Commercial Code §§ 9600 et seq., and the relevant consumer protections, credit reporting, auto/vehicle/truck financing, repossession and related laws and statutes may be the basis for a private cause of action under the UCL.

228. Defendants have engaged in unlawful, unfair, and/or fraudulent business acts or practices in violation of the UCL, as alleged herein.  By Defendants' conduct and practices alleged herein, Defendants have committed violations of the aforementioned statutes and regulations, and is therefore in violation of the "unlawful" prong of the UCL.

229.   California case law has interpreted the "unfair" prong of Section 17200 to allow the court to weigh the utility or justification for a defendant's conduct against the harm caused to the victim and/or public.   Moreover, courts have also interpreted the "unfair" prong to look to whether a defendant's conduct constitutes a sharp practice or violates or is an affront to a public policy.

230.   Defendants' conduct and practices offend public policy and/or a public policy including those related to the assurance that debtors are treated fairly and are provided with a fair opportunity to redeem property on default and in fact are afforded access to fair financing terms and fair and honest lenders.

231.   Further, Defendants' conduct constitute a sharp practice in that Defendants prey on consumers, clients, or those in the public needing a loan or financing for their vehicle or property purchase and impose onerous and/or illegal terms and obligations on the debtor and then fail to follow basic repossession and consumer protection laws and commercial codes, including failing to provide reasonable and/or legally required notices and a reasonable and/or realistic opportunity to redeem a vehicle or property upon default and/or failing to adhere to commercially reasonable standards for the disposition of collateral, and/or conspiring to strip consumers and debtor of their contractual and bankruptcy rights, and/or allegedly selling collateral to non-existent parties, and other wrongful conduct.

232.   California law interprets the "fraudulent" prong of Section 17200 to mean that the Defendants' behavior is likely to deceive the public.   As more fully described and alleged above, Defendants' acts and practices are likely to deceive members of the public, and in fact, do deceive members of the public, constituting a fraudulent business act or practice.   This conduct is ongoing and continues to date.

233.   Defendants engaged in wrongful and fraudulent conduct as set forth above, including the conduct alleged in the claims above, and especially the claim for fraud and negligent misrepresentation.

234.   Defendants sent the After Repo Letter Plaintiff informing him of the

**CLASS ACTION COMPLAINT**

outstanding balance owed and demanding final payment of this balance.   The content and representations contained in the letter, as well as the blatant omissions of facts not contained in the letter or otherwise disclosed to Plaintiff by Defendants, could and would justifiably lead a reasonable person, including Plaintiff, to determine among other things that the repossessed property or vehicle remained in Defendants' possession and could still be redeemed.   The letter went further to highlight and explain the legal rights of the debtor, Plaintiff and Defendants.   Plaintiff was deceived by such wrongful conduct by Defendants and such conduct would likely deceive the general public.   Defendants' misrepresentations and omissions to the Bankruptcy Court also were intended to mislead the public, the Court, and Plaintiff—indeed they were submitted in documents specifically understood to be public and in furtherance of their illegal and wrongful conduct and scheme.

235.   In fact contrary to the deceptive letter, its representations, and Defendants' omissions, Defendants allegedly no longer possessed and/or owned Plaintiff's Vehicle on the date Defendants' sent the After Repo Letter to Plaintiff. Defendants allegedly had actually sold the Vehicle the very same day Defendants had repossessed the Vehicle.   Nevertheless Defendants sent Plaintiff a letter the day after Defendants' sold the Vehicle indicating that storage charges would continue to be assessed and making a final demand for payment, and making other representations (and omissions) that reasonably led Plaintiff-and would lead any reasonable member of the general public---to believe that the Vehicle could still be redeemed, remained in Defendants' possession, and had not been sold or otherwise disposed of.   All such conduct violates the UCL.

236.   However the representations that the vehicle itself had been sold were in fact false as well.   There was no public record of the transfer of title and in fact the entity to which the sale was purportedly made was not even a legal entity and thus could not have occurred.   These misrepresentations were made intentionally.

237.   Defendants' conduct as alleged throughout this Complaint above and in

the statement of facts section, as well as based upon the claims alleged herein above, constitute violations of California Business and Professions Code §§ 17200 et seq.

238.   Defendants' wrongful conduct has resulted in injury in fact to Plaintiff as alleged above throughout this Complaint, including without limitation, emotional distress and the physical damages and manifestations therefrom, monetary damages, anxiety, and other stress and harm.

239.   Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein, Defendants have violated several California laws and regulations and other statutes and regulations as more fully set forth above and in the other claims and said predicate acts are per se violations of California Business & Professions Code §§ 17200 et seq.

240.   Plaintiff alleges that Defendants' misconduct as alleged herein, gave, and has given Defendants an unfair competitive advantage over their competitors. The scheme implemented by Defendants is designed to defraud consumers and enrich the Defendants.

241.   The foregoing acts and practices have caused substantial harm to California consumers.

242.   Plaintiff alleges that as a direct and proximate result of the aforementioned acts, Defendants has been unjustly enriched and should be required to disgorge any illicit profits and/or make restitution to Plaintiff and other consumers who have been harmed and/or be enjoined from continuing in such practices pursuant to California Business & Professions Code sections 17203 and 17204.  Additionally, Plaintiff is therefore entitled to injunctive relief preventing Defendants and their agents, representatives, officers, directors, and employees from engaging in such same or similar wrongful conduct as alleged herein, and reasonable attorney's fees as available under California Business & Professions Code sections 17200 and related sections.

243.   Similarly, Defendants engaged in wrongful conduct such as directed that

at Plaintiff with respect to the class members and as a result of Defendants' conduct in violation of the UCL Defendants have caused injury in fact to the class members. As such the class members are entitled to disgorgement of any illicit profits obtained by Defendants as well as restitution and injunctive relief as alleged above and herein.

**TENTH CLAIM FOR RELIEF**

**<u>Declaratory Judgment - 28 U.S.C. §§ 2201-2202</u>**

2.    Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

3.    An actual, present and justiciable controversy has arisen between Plaintiff and Defendants regarding the facts and issues and conduct as alleged herein.

4.    Plaintiff seeks a declaration that Defendants violated the UCC and/or California Commercial Code.

5.    Plaintiff seek a declaration that Defendants did not sell or otherwise dispose of Plaintiff's vehicle, the collateral, in a commercially reasonable fashion.

6.    Plaintiff seeks a declaration that Defendants conspired to strip and/or deprive Plaintiff of Plaintiff's contractual and/or bankruptcy rights, including without limitation the right to redeem Plaintiff's vehicle.

7.    Plaintiff seeks a declaration that JCB Leasing & Finance did not legally exist at the time or on the date Defendants Cornerstone first alleged they sold the vehicle to JCB Leasing & Finance and/or prior to Plaintiff's filing for bankruptcy.

8.    Plaintiff seeks a declaration that Defendants' Cornerstone did not sell or otherwise transfer legal title or ownership in Plaintiff's vehicle to JCB or any third party prior to Plaintiff's filing for bankruptcy.

9.    Plaintiff seeks a declaration that Defendants' alleged conduct violates RICO.

10.    Plaintiff seeks a declaration that Defendants' conduct constitutes a violation of the UCC and/or California Commercial Code.

11.    Plaintiff seeks a declaration that Defendants' alleged conduct constitutes

**CLASS ACTION COMPLAINT**

1  a conversion of Plaintiff's vehicle and property.

2       12.   Plaintiff seeks a declaration that by engaging in the above described acts

3  and/or practices as alleged herein, Defendants have violated several California laws

4  and regulations and said predicate acts are per se violations of California Business &

5  Professions Code §§ 17200 et seq.

6                 **VII.**       **PRAYER**

7  WHEREFORE, Plaintiff prays for the following:

8    1. As to Plaintiff:

9       a.  Immediate return of the Truck and Truck title to Plaintiff, or in the

10         alternative an award of monetary damages or restitution in an amount

11         equal to purchase in full a new vehicle of identical or greater value

12         with at least the same (or greater) options and upgrades;

13       b.  A declaration that Defendants violated the UCC and/or California

14         Commercial Code.

15       c.  A declaration that Defendants did not sell or otherwise dispose of

16         Plaintiff's vehicle, the collateral, in a commercially reasonable

17         fashion.

18       d.  A declaration that Defendants conspired to strip and/or deprive

19         Plaintiff of Plaintiff's contractual and/or bankruptcy rights, including

20         without limitation the right to redeem Plaintiff's vehicle.

21       e.  A declaration that JCB Leasing & Finance did not legally exist at the

22         time or on the date Defendants Cornerstone first alleged they sold the

23         vehicle to JCB Leasing & Finance and/or prior to Plaintiff's filing for

24         bankruptcy.

25       f.  A declaration that Defendants' Cornerstone did not sell or otherwise

26         transfer legal title or ownership in Plaintiff's vehicle to JCB or any

27         third party prior to Plaintiff's filing for bankruptcy.

28       g.  A declaration that Defendants' alleged conduct violates RICO.

1       h. A declaration that Defendants' conduct constitutes a violation of the

2           UCC and/or California Commercial Code.

3       i. A declaration that Defendants' alleged conduct constitutes a

4           conversion of Plaintiff's vehicle and property.

5       j. A declaration that by engaging in the above described acts and/or

6           practices as alleged herein, Defendants have violated several

7           California laws and regulations and said predicate acts are per se

8           violations of California Business & Professions Code §§ 17200 et

9           seq.; and

10   2. As to Plaintiff and the class members:

11       a. Monetary damages in an amount to be proven at trial;

12       b. Equitable relief on Plaintiff's §17200 claim awarding Plaintiff

13           restitution in an amount to be proven at trial;

14       c. Equitable relief on Plaintiff's §17200 disgorging any of Defendants'

15           ill gained and/or illicit profits;

16       d. Equitable relief on Plaintiff's §17200 claim enjoining Defendants and

17           its officers, directors, agents, representatives, and employees from

18           further conduct identical or similar in nature to the wrongful acts

19           alleged herein, including without limitation, the financing of vehicles,

20           repossession of vehicles, and/or sale of vehicles on or about the same

21           day as repossession and/or refusing to adhere to the requirements of

22           the UCC and California's UCC, and/or engaging in acts likely to

23           deceive or defraud consumers and the public such as the sending of

24           letters similar to the After Repo Letter which contain

25           misrepresentations and/or omissions which would reasonably mislead

26           the reader and/or the public as to their rights and remedies and the

27           status of their or other's property that is in default or has been

28           repossessed;

e.  Treble damages to the extent permitted by law, statute, the Court, or the jury

f.  Punitive damages to the maximum extent permitted by law, statute, the Court, or the jury;

g.  Attorney's fees to the maximum extent permitted by law, statute, case law, the Court, or the jury;

h.  Costs of suit;

i.  Such other and further relief as the Court may deem just, fair, and proper.

## JURY TRIAL DEMANDED

Plaintiff demands trial by jury on all claims and triable issues.

Dated: December 15, 2015                  **DORROS LAW**

*Torin A. Dorros*

_____

Torin A. Dorros
*Attorneys for Plaintiffs*

**CLASS ACTION COMPLAINT**