UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 15-09699-RGK (FFMx)** | Date | March 2, 2016 |
|---|---|---|---|
| Title | *Moises Garcia Guillen v. Cornerstone Financial Services et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams (Not Present) | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Defendants' Motions to Dismiss (DE 20, 21)

## I. INTRODUCTION

On December 17, 2015, Moises Garcia Guillen ("Plaintiff") filed suit against Cornerstone Financial Services ("Cornerstone"), David Stone dba Cornerstone Financial Services and in his individual capacity, and John C. Beery, Jr. dba JCB Leasing & Finance and in his individual capacity (collectively, "Defendants"). The Complaint alleges the following claims: (1) Civil RICO Violations, (2) Civil Conspiracy, (3) Conversion, (4) Violations of Uniform Commercial Code ("UCC") and California Commercial Code, (5) Breach of Contract, (6) Fraud and Negligent Misrepresentation, (7) Violation of California's Unfair Competition Law, (8) Declaratory Judgment.

Presently before the Court are two motions to dismiss. The first was filed by Cornerstone and David Stone. (Cornerstone's Mot. To Dismiss, ECF No. 20.) The second was filed by John C. Beery, Jr. dba JCB Leasing & Finance. (JCB's Mot. To Dismiss, ECF No. 21.) The Court addresses both motions to dismiss in a single order, as both motions raise substantially similar arguments.[1] For the following reasons, the Court **GRANTS** both motions to dismiss.

## II. FACTUAL BACKGROUND

The instant action requires this Court to wade into the murky waters of RICO claims. The crux of the claim is that Cornerstone and JCB Leasing & Finance perpetrated an illegal scheme to quickly and fraudulently dispose of collateral before debtors had an opportunity to exercise any of their statutory rights under the Uniform Commercial Code ("UCC") or their bankruptcy rights.

---

[1] While the motions to dismiss exhibit considerable overlap in the arguments advanced, in a few instances each motion puts forward a different position on the same issue. In those instances, the Court has fully considered and addressed the alternative arguments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 15-09699-RGK (FFMx)** | Date | March 2, 2016 |
|---|---|---|---|
| Title | *Moises Garcia Guillen v. Cornerstone Financial Services et al.* | | |

Plaintiff is a commercial truck driver who leased and financed his truck through Cornerstone. The two parties entered into a financing agreement on October 9, 2011, in which Plaintiff pledged his truck as collateral in the case of default. In the agreement, Cornerstone allegedly promised to: (1) dispose of the collateral in a commercially reasonable manner if a default occurs, and (2) afford Plaintiff his UCC and bankruptcy rights in case of default.

### A.     The Repossession and Bankruptcy

On March 5, 2015, Cornerstone repossessed Plaintiff's vehicle because he was in default. On March 6, 2015, Plaintiff hired an attorney who filed Chapter 13 bankruptcy and emailed Cornerstone informing them of the bankruptcy. (Exs. to Class Action Compl. Ex. 1, ECF No. 11.)

On March 9, 2015, Cornerstone responded and explained that the truck had already been sold on March 5, 2015—the same day it was repossessed. (Exs. to Class Action Compl. Ex. 2, ECF No. 11.) Cornerstone also attached a Bill of Sale that listed "JCB Leasing & Finance" as the buyer and a check from "John C Beery dba JCB Leasing & Finance." (Exs. to Class Action Compl. Ex. 2, ECF No. 11.) The check also listed the following address for JCB Leasing & Finance: P.O. Box 3482, San Rafael, CA 94912.

Even though Cornerstone claimed in its email that it had sold the truck on March 5, it sent Plaintiff a demand for payoff dated March 6, 2015, which charged Plaintiff for two days of storage fees beginning March 5, 2015. (Exs. to Class Action Compl. Ex. 3, ECF No. 11.) Because the demand for payoff charged for *two days* of storage fees starting on March 5, 2015, Plaintiff alleges that the truck must have been in Cornerstone's possession on March 5 and 6—one day after it was purportedly sold. Plaintiff points out this discrepancy to support his larger claim of fraudulent misrepresentation.

As part of his bankruptcy, Plaintiff filed an adversary proceeding against Cornerstone in which he sought turnover of the vehicle for inclusion in the bankruptcy estate. (No. 2:15-ap-01207-VZ). Plaintiff raised the same arguments before the bankruptcy court that he now brings before this Court. Specifically, he argued that Cornerstone had engaged in a sham transaction with JCB Leasing & Finance to remove the collateral from the bankruptcy estate and deprive Plaintiff of his bankruptcy rights.

Cornerstone moved to dismiss the adversary proceeding by arguing that it had sold the vehicle before the bankruptcy was initiated, and, therefore, the truck was not properly part of the bankruptcy estate. In support of its motion to dismiss, Cornerstone submitted a declaration, testifying that the truck had been repossessed and sold. (Exs. to Class Action Compl. Ex. 4, ECF No. 11.) Moreover, both JCB Leasing & Finance and Cornerstone submitted declarations that the two entities were distinct and separate organizations. (Exs. to Class Action Compl. Ex. 4, ECF No. 11.)

The bankruptcy court dismissed the adversary proceeding in a summary order, stating that Plaintiff had failed to allege a claim for which relief can be granted. The bankruptcy court did not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-09699-RGK (FFMx) | Date | March 2, 2016 |
|---|---|---|---|
| Title | *Moises Garcia Guillen v. Cornerstone Financial Services et al.* | | |

elaborate or explain its reasoning for ordering dismissal. After the bankruptcy court dismissed the claim, Plaintiff and his counsel began investigating the circumstances surrounding the alleged sale of the truck.

### B. Investigating the Sale

Plaintiff alleges that his counsel investigated Cornerstone's sale of the truck and discovered the following information. First, there was no public record of JCB Leasing & Finance, the entity to which the truck was purportedly sold. Additionally, The P.O. Box address of JCB Leasing & Finance listed on the alleged purchase check was an address that had been owned by Cornerstone for more than 30 years. Finally, several months after the alleged truck sale, DMV records showed no transfer of title referencing JCB Leasing & Finance or John C. Beery.

Plaintiff alleges that Defendants began to cover their tracks by creating the appearance that Cornerstone and JCB Leasing & Finance were separate entities that had engaged in a legitimate sale. According to Plaintiff, Defendants filed a dba on July 1, 2015—less than one month after the bankruptcy proceedings—to lend a sense of legitimacy to their prior transactions. The dba filing claimed that John C. Beery had been doing business as JCB Leasing & Finance at the following address: 2415 Mariner Square Drive, Alameda, California 94501. (Exs. to Class Action Compl. Ex. 6, ECF No. 11.) Plaintiff's counsel contacted the business located at 2415 Mariner Square Drive and discovered that a company named John Beery Yachts was doing business there. The company informed Plaintiff's counsel that it had never heard of JCB Leasing & Finance. (Exs. to Class Action Compl. Ex. 5 ¶14, ECF No. 11.)

Finally, Plaintiff claims that a UCC search reveals financing statements, dating back to 1999, for a creditor claiming to be JCB Leasing & Finance but using the 3482 P.O. Box owned by Cornerstone. Even though the UCC records indicate transactions concluded on behalf of JCB Leasing & Finance, there was no formal public record of any company or legal entity using that name until July 2015. The Complaint also points out that "a great number of the UCC filings appear to be related to the trucking industry—that is the industry specifically which Cornerstone finances." (Compl. ¶108, ECF No. 1.)

### C. The Alleged Schemes

Plaintiff advances two different theories: (1) that the alleged truck sale violated the UCC, and (2) that the alleged truck sale was nothing more than a sham transaction. (Compl. ¶27, ECF No. 1.) While the exact contours of the alleged fraudulent scheme are not precisely defined in the Complaint, the Court ascertains two possibilities in light of Plaintiff's two theories.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 15-09699-RGK (FFMx)** | Date | March 2, 2016 |
|---|---|---|---|
| Title | *Moises Garcia Guillen v. Cornerstone Financial Services et al.* | | |

       1.     <u>*Scheme to Violate UCC Rights*</u>

    The first theory of liability assumes that the sale between Cornerstone and JCB Leasing & Finance was legitimate. According to Plaintiff, this first scheme allegedly began when Cornerstone fraudulently represented in the October 9, 2012 financing agreement that, in case of default, any sale of collateral would occur in a commercially reasonable manner. On March 5, when Plaintiff was in default, Cornerstone repossessed and sold his truck within less than 24 hours—an action that allegedly violates Plaintiff's UCC rights. Based on this sequence of events, Plaintiff alleges that Defendants engaged in a fraudulent scheme to induce debtors' reliance by making false promises in the contract, only to later deprive the debtors of their UCC rights once they default on their loan obligations.

       2.     <u>*Scheme to Violate Bankruptcy Rights*</u>

    The second theory of liability involves a more elaborate scheme with several fraudulent representations. This second alleged scheme proceeds as follows: (1) Cornerstone promises in the contract that it will afford debtors their bankruptcy rights in case of default, (2) Once a debtor falls into default, Cornerstone repossesses the collateral and conducts a sham transaction by selling the vehicle to its alias, JCB Leasing & Finance, (3) Cornerstone falsely represents to its debtors that it has sold the vehicle to deter them from pursuing bankruptcy rights, and (4) If a debtor proceeds to bankruptcy, Cornerstone falsely represents to the bankruptcy court that is has legitimately sold the collateral to exclude the vehicle from the bankruptcy estate. In sum, Defendants allegedly maintain a "long standing pattern and practice of repossessing and purportedly immediately selling collateral prior to the date that any debtor could file for bankruptcy or otherwise obtain the redemption or turnover of the collateral." (Compl. ¶59, ECF No. 1.)

    To effectuate the scheme, Defendants allegedly committed the following acts of mail/wire fraud:

> 1. On October 9, 2012, Cornerstone falsely represented in the original financing agreement that Plaintiff would be afforded his bankruptcy rights if he were to default on his loan obligations. (Compl. ¶103, ECF No. 1.)
>
> 2. On March 6, 2015, Cornerstone sent Plaintiff a repossession letter and demand for payoff, even though it allegedly knew that the truck had already been sold. (Compl. ¶103, ECF No. 1.)
>
> 3. On March 9, 2015, Cornerstone falsely represented in an email that Plaintiff's truck had been sold on March 5, 2015. (Compl. ¶103, ECF No. 1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-09699-RGK (FFMx) | Date | March 2, 2016 |
|---|---|---|---|
| Title | *Moises Garcia Guillen v. Cornerstone Financial Services et al.* | | |

       4. On May 28, 2015, Cornerstone submitted a declaration to the bankruptcy court, which intentionally omitted the exact date of the truck sale. (Compl. ¶104, ECF No. 1.)

       5. On June 18, 2015, Cornerstone falsely represented to the bankruptcy court that JCB Leasing & Finance was a distinct legal entity separate and apart from Cornerstone. (Compl. ¶104, ECF No. 1.)

       6. On June 18, 2015, JCB Leasing & Finance also represented to the bankruptcy court that JCB Leasing & Finance was a distinct legal entity separate and apart from Cornerstone. (Compl. ¶104, ECF No. 1.)

      **D.**    **Plaintiff's Alleged Harm**

     Plaintiff claims that he suffered in several ways as a result of Defendants' fraudulent conduct. First, Plaintiff alleges that Defendants' scheme deprived him of his property and trucking business because he could have redeemed his collateral through bankruptcy proceedings. He also claims that he lost a lucrative load hauling contract, which he could have performed if he had retained possession of his truck. In addition to these monetary harms, Plaintiff also alleges severe emotional distress.

     Second, Plaintiff claims that Defendants' scheme also affected a truck owned by his brother, Maximo Garcia. Maximo owned a truck that did not technically comply with the current vehicle emission laws implemented by the California State Assembly in 2014. However, Maximo's vehicle was granted an exemption to continue operating contingent upon the use and operation of Plaintiff's truck. Thus, without Plaintiff's truck, Maximo's truck was unable to operate and generate business. Additionally, Maximo pledged his own truck as collateral for Plaintiff's loan with Cornerstone. On April 17, 2015, Defendants repossessed Maximo's vehicle, depriving him of his business.

**III.**    **JUDICIAL STANDARD**

     A party may move to dismiss a claim for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). Dismissal for failure to state a claim is "proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Furthermore, in order to survive a motion to dismiss, a complaint must contain sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 15-09699-RGK (FFMx)** | Date | March 2, 2016 |
|---|---|---|---|
| Title | *Moises Garcia Guillen v. Cornerstone Financial Services et al.* | | |

The standard set forth in *Twombly* "governs the pleading standard in all civil actions and proceedings in the United States district courts." *Ashcroft*, 556 U.S. at 684.

For the purposes of a motion to dismiss, the court must assume that all factual allegations in the complaint are true, and must construe the complaint in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, the court need not accept as true conclusory legal allegations cast in the form of factual allegations. *Ashcroft*, 556 U.S. at 678.

**IV.     DISCUSSION**

Plaintiff alleges the following claims: (1) Civil RICO Violations, (2) Civil Conspiracy, (3) Conversion, (4) Violations of Uniform Commercial Code ("UCC") and California Commercial Code, (5) Breach of Contract, (6) Fraud and Negligent Misrepresentation, (7) Violation of California's Unfair Competition Law, and (8) Declaratory Judgment. The ensuing analysis deals exclusively with Plaintiff's RICO claim because, as set forth below, the Court finds that Plaintiff has failed to plead a RICO claim and declines to exercise supplemental jurisdiction over the remaining state law claims.

To plead a RICO claim, the plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) which injured his business or property. *Sedima, S.P.R.L. v. Imrex Co.* 473 U.S. 479, 496-97 (1985). If fraudulent acts are the basis of the alleged pattern of racketeering activity, Rule 9(b) requires the plaintiff to allege with "particularity." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.* 806 F.2d 1393, 1400-01 (9th Cir. 1986).

At the outset, the court dismisses any RICO claim based on the first alleged scheme (i.e., the scheme to violate UCC rights) because Plaintiff has failed to plead two predicate acts. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989) (requiring at least two predicate acts to state a claim for a RICO violation). The only act of mail or wire fraud pled in connection with the first scheme is the fraudulent representation in the contract that Cornerstone would dispose of collateral in a commercially reasonable manner. Beyond that, the first scheme contains only a repossession and immediate sale of collateral, neither of which constitutes a predicate act of mail or wire fraud.

In analyzing the sufficiency of Plaintiff's RICO claim, then, the Court considers only the second alleged scheme (i.e., the scheme to violate bankruptcy rights). Defendants argue that Plaintiff has failed to and cannot allege facts sufficient to establish four of the requisite RICO elements: (1) enterprise, (2) racketeering activity; (3) pattern, and (4) proximate cause. The Court agrees in part, finding that Plaintiff has failed to adequately allege the "pattern" and "proximate cause" elements.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 15-09699-RGK (FFMx)** | Date | March 2, 2016 |
|---|---|---|---|
| Title | *Moises Garcia Guillen v. Cornerstone Financial Services et al.* | | |

### A. <u>Enterprise</u>

RICO defines the term "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). This expansive definition is "not very demanding." *Odom*, 486 F.3d at 548. An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Id.* at 552 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). A RICO enterprise does not require a hierarchy, a chain of command, fixed roles, regular meetings, or rules and regulations. *Boyle v. United States*, 556 U.S. 938, 948 (2009). Rather, an association-in-fact enterprise only needs three structural features: (1) "a purpose," (2) "relationships among those associated with the enterprise," and (3) "longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946.

As to the first element, Plaintiff alleges a common purpose, namely Defendants engaged in a scheme to defraud Plaintiff by stripping him of bankruptcy rights. (Compl. ¶¶57-89, ECF No. 1.) The Complaint alleges that Defendants achieved this purpose by fabricating a sham sale of the truck prior to any bankruptcy proceeding in order to exclude the collateral from the bankruptcy estate. (Compl. ¶27, ECF No. 1.)

As to the second and third elements, Plaintiff alleges a lengthy relationship between Cornerstone and JCB Leasing & Finance, long enough to pursue the enterprise's purpose. In fact, the Complaint alleges a relationship spanning over fifteen years. For example, the check that JCB Leasing & Finance used to purportedly purchase Plaintiff's truck contained an address that Cornerstone has owned for thirty years. (Compl. ¶¶65-67, 82-84, ECF No. 1.) Moreover, a UCC search reveals that, since 1999 and possibly as far back as 1994, some party has filed UCC financing statements for a creditor claiming to be a JCB legal company, using the same Cornerstone address which was also on the check purportedly used to buy Plaintiff's truck. Finally, Plaintiff asserts that there was no formal record of any company or legal entity named JCB until July 2015, after the car was purportedly sold. Thus, the Court finds Plaintiff has sufficiently alleged enough facts at the pleading stage that support the existence of an enterprise.

In rebuttal, Defendants rely on a Seventh Circuit case that deviates from Ninth Circuit precedent. *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797 (7th Cir. 2008). In *Limestone*, the Seventh Circuit held there was no hint of a structure which would support an enterprise, as "[n]owhere in the complaint [did] one find anything to indicate a structure of any kind. There [was] no reference to a system of governance, an administrative hierarchy, a joint planning committee, a board, a manager, a staff, headquarters, personnel having differentiated functions, a budget, records, or any other indicator of a legal or illegal enterprise." *Id.* at 804. However, the Ninth Circuit has held that "an associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 15-09699-RGK (FFMx)** | Date | March 2, 2016 |
|---|---|---|---|
| Title | *Moises Garcia Guillen v. Cornerstone Financial Services et al.* | | |

*Odom,* 486 F.3d at 551.[1] Furthermore, the Supreme Court has held that a RICO enterprise does not require a hierarchy, a chain of command, fixed roles, regular meetings, or rules and regulations. *Boyle,* 556 U.S. at 948. As this Court is bound by Ninth Circuit precedent, it rejects Defendants' argument premised on contrary Seventh Circuit law.

### B. Racketeering Activity

"'Racketeering activity' is defined in 18 U.S.C. § 1961(1)(B) as including any act 'indictable' under certain enumerated federal criminal statutes, including 18 U.S.C. § 1341, which makes mail fraud a criminal offense, and 18 U.S.C. § 1343, which makes wire fraud a crime." *Schreiber*, 806 F.2d at 1399. "To allege a violation of the mail fraud statute, it is necessary to show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *Id.* at 1399-1400. The elements of a wire fraud violation are identical except a plaintiff must show that the defendant used the "United States wires" instead of the "United States mails" to commit the fraud. *Id.*

Any allegations of fraud in a civil RICO claim must satisfy the heightened pleading standards set forth in Federal Rule of Civil Procedure 9(b). *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). "Rule 9(b) requires that the pleader state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989). "While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind—or scienter—of the defendants may be alleged generally." *Id.* at 554.

Here, Defendants argue that Plaintiff has not adequately pled any predicate acts because the fraudulent misrepresentations are not alleged with sufficient particularity. As recited above, the Complaint alleges the following fraudulent representations:

> 1. On October 9, 2012, Cornerstone falsely represented in the original financing agreement that Plaintiff would be afforded his bankruptcy rights if he were to default on his loan obligations. (Compl. ¶103, ECF No. 1.)
>
> 2. On March 6, 2015, Cornerstone sent Plaintiff a repossession letter and demand for payoff, even though it

---

[1] In fact, the *Limestone* court expressly disagreed with the Ninth Circuit's decision in *Odom*, disapproving of the more lenient standard. *Limestone*, 520 F.3d at 804.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-09699-RGK (FFMx) | Date | March 2, 2016 |
|---|---|---|---|
| Title | *Moises Garcia Guillen v. Cornerstone Financial Services et al.* | | |

allegedly knew that the truck had already been sold. (Compl. ¶103, ECF No. 1.)

3. On March 9, 2015, Cornerstone falsely represented in an email that Plaintiff's truck had been sold on March 5, 2015. (Compl. ¶103, ECF No. 1.)

4. On May 28, 2015, Cornerstone submitted a declaration to the bankruptcy court, which intentionally omitted the exact date of the truck sale. (Compl. ¶104, ECF No. 1.)

5. On June 18, 2015, Cornerstone falsely represented to the bankruptcy court that JCB Leasing & Finance was a distinct legal entity separate and apart from Cornerstone. (Compl. ¶104, ECF No. 1.)

6. On June 18, 2015, JCB Leasing & Finance also falsely represented to the bankruptcy court that JCB Leasing & Finance was a distinct legal entity separate and apart from Cornerstone. (Compl. ¶104, ECF No. 1.)

1. *Misrepresentation 1: The Contract*

Defendants contend that Plaintiff failed to attach the contract or quote the exact language in the financing agreement that constitutes the misrepresentation. The Court finds no merit to this contention, as Plaintiff clearly alleged the time, place, and specific content of the misrepresentation contained in the contract. To require a verbatim recitation of the exact language or a physical attachment of the contract borders on the pedantic. *Advanced Salon Visions Inc. v. Lincoln Benefit Life Co.*, No. 08CV2346, 2010 WL 3341803, at *14 (S.D. Cal. Aug. 25, 2010) ("Plaintiffs' allegations of fraud may not include . . . a verbatim recitation of what those statements were, but neither are they, as Defendants argue, 'conclusory allegations of deceptive behavior.'").

Defendants also argue that Plaintiff failed to allege reliance on the contract. According to Defendants, in order for Plaintiff to have relied on the contract, he would have had to intend a future default and bankruptcy at the time of entering into the contract. This argument is nonsensical. Plaintiff need not intentionally plan, or even anticipate, a default and bankruptcy to rely on a contract provision that protects him in the event of a default and bankruptcy. Indeed, the whole point of such a provision is to ensure that Plaintiff's rights will be protected in the unforeseen event that a default and bankruptcy arises. Plaintiff has adequately alleged that Defendants' false promise in the contract ensnared him into a larger fraudulent scheme by inducing his reliance.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 15-09699-RGK (FFMx)** | Date | March 2, 2016 |
|---|---|---|---|
| Title | *Moises Garcia Guillen v. Cornerstone Financial Services et al.* | | |

2. *Misrepresentations 2-3: The Letter and Email*

In addition to the misrepresentation in the contract, Plaintiff alleges that Cornerstone committed fraudulent misrepresentations in the March 6 letter demanding payoff and the March 9 email claiming that the truck had been sold. While both of these misrepresentations are alleged with sufficient particularity, Plaintiff fails to demonstrate reliance. The March 6 letter and the March 9 email were both received after Plaintiff had already initiated bankruptcy proceedings; therefore, Plaintiff could not have detrimentally relied on these documents because he pursued his rights despite the representations.

3. *Misrepresentations 4-6: The Bankruptcy Declarations*

Plaintiff alleges that both Cornerstone and JCB Leasing & Finance made false representations before the bankruptcy court. On May 28, 2015, Cornerstone allegedly committed a fraudulent misrepresentation by intentionally omitting the date of the truck sale in a declaration submitted to the bankruptcy court. On June 18, 2015, both Cornerstone and JCB Leasing & Finance allegedly deceived the court by representing that the two entities were separate and distinct organizations.

Defendants first argue that Plaintiff could not have possibly relied on the bankruptcy declarations, as the statements were made long after the truck had been repossessed and sold. Plaintiff rebuts by citing to a Supreme Court decision holding that, for RICO claims, first-party reliance is not necessary. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 660 (2008) ("RICO's text provides no basis for imposing a first-party reliance requirement."). The Court explained that a plaintiff bringing a civil RICO claim predicated on mail or wire fraud need not prove that she relied on the defendant's fraud as long as she can demonstrate that a third party relied on the defendant's fraud, which resulted in harm to the plaintiff. *Id.* at 649 ("[A] person can be injured 'by reason of' a pattern of mail fraud even if he has not relied on any misrepresentations."). Here, Plaintiff has alleged third-party reliance that impacted his rights. Specifically, he alleged that the bankruptcy court relied on Defendants' misrepresentations to dismiss the adversary proceeding, thereby excluding the truck from the bankruptcy estate and eliminating any chance of redemption through a Chapter 13 restructuring plan.

Defendants next contend that the representations before the bankruptcy court cannot serve as the basis for tort liability because the statements are protected by: (1) the California litigation privilege, (2) the *Noer-Pennington* doctrine, and (3) the common law litigation privilege.

a. *The California Litigation Privilege*

California Civil Code §47 contains the California litigation privilege, which "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action." *Graham-Sult v. Clainos*, 756 F.3d 724, 741 (9th Cir. 2014) (citation omitted) (internal quotation marks omitted). Defendants argue that their declarations were: (1) made in a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 15-09699-RGK (FFMx)** | Date | March 2, 2016 |
|---|---|---|---|
| Title | *Moises Garcia Guillen v. Cornerstone Financial Services et al.* | | |

judicial proceeding, (2) as litigants and witnesses, (3) to achieve the purpose of dismissing the adversary proceeding, and (4) had a logical relation to the action. While Defendants have satisfied the four elements of the California litigation privilege, their reliance on this defense is misplaced. Multiple courts have held that the RICO statute preempts state litigation privilege. *William Villa v. Heller*, 885 F. Supp. 2d 1042, 1051 (S.D. Cal. 2012) (collecting cases). Therefore, the California litigation privilege provides no protection for Defendants in this case, as they are facing RICO allegations.

        b.     *The Noerr-Pennington Doctrine*

The *Noerr-Pennington* doctrine, rooted in the Petition Clause of the First Amendment, protects citizens' rights to advocate by insulating lobbying and petition efforts from antitrust liability. *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1183 (9th Cir. 2005) ("The doctrine extends to all three branches of government, and thus also exempts bringing a lawsuit-that is, petitioning a court-from antitrust liability."). While the doctrine was originally announced in the context of antitrust actions, the Ninth Circuit has extended its scope to include RICO claims. *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009). In other words, a party's efforts to earnestly petition any branch of government cannot serve as the basis for a later RICO action. *Id.*

The *Noerr-Pennington* doctrine, however, is subject to a sham exception, which invalidates a party's protection if that party perpetrates a fraud on the court. The Ninth Circuit explains, "[I]n the context of a judicial proceeding . . . litigation can be deemed a sham if 'a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.'" *Kottle v. Nw. Kidney Centers*, 146 F.3d 1056, 1060 (9th Cir. 1998).

Plaintiff argues that Defendants' conduct before the bankruptcy court was fraudulent, as they intentionally omitted the date of collateral sale and misrepresented that Cornerstone and JCB Leasing & Finance were two separate entities. Based on these misrepresentations, Plaintiff maintains, the bankruptcy court concluded that the truck had been legitimately sold prior to the bankruptcy and dismissed the adversary proceeding. The Court agrees, as Plaintiff has sufficiently alleged conduct that deprived the bankruptcy litigation of its legitimacy, falling squarely within the sham litigation exception.

Defendants retort that the bankruptcy court did not actually rely on the representations made by Cornerstone or JCB Leasing & Finance because the bankruptcy court's order gave "no indication that the motion was granted based on those declarations." (Reply ISO JCB's Mot. To Dismiss 5:27-28, ECF No. 29.) Common sense dictates otherwise. The only argument Cornerstone raised in support of its motion to dismiss the adversary proceeding before the bankruptcy court was that Cornerstone had sold Plaintiff's truck to a distinct legal entity, JCB Leasing & Finance, before the bankruptcy was initiated. To that end, both Cornerstone and JCB Leasing & Finance submitted declarations attesting to the propriety of the sale. Admittedly, the bankruptcy court's order does not provide any reasoning whatsoever to explain its rationale for dismissing the adversary proceeding. It is plausible to infer,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 15-09699-RGK (FFMx)** | Date | March 2, 2016 |
|---|---|---|---|
| Title | *Moises Garcia Guillen v. Cornerstone Financial Services et al.* | | |

however, that the bankruptcy court, in the absence of any other arguments before it, relied on Defendants' declarations and averments that the truck had been sold prior to bankruptcy.

        c.        *The Common Law Litigation Privilege*

Defendants invoke *Briscoe v. LaHue*, 460 U.S. 325 (1983), and argue that the statements made before the bankruptcy court cannot serve as the basis for RICO liability because they are shielded by the common law litigation privilege. In *Briscoe*, the Supreme Court reiterated the established common law litigation privilege, which immunizes witnesses in judicial proceedings from subsequent litigation based on their testimony. *Id.* at 330-31. Defendants' efforts to fall within *Briscoe's* ambit are unavailing, as the Ninth Circuit has addressed—and rejected—an identical argument. *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 364 (9th Cir. 2005).

In *Living Designs*, the plaintiff brought a RICO claim premised on the defendant's alleged concealment of information in a prior litigation. *Id.* at 356-59. The defendant argued for dismissal of the RICO claim because their prior statements in litigation were protected by the common law litigation privilege. *Id.* at 364. The Ninth Circuit disagreed and explained,

> Common law immunizes *witnesses* in judicial proceedings from subsequent litigation based on their testimony. [Defendant] has not cited any federal case which holds that a party's litigation conduct in a prior case is entitled to absolute immunity and cannot form the basis of a subsequent federal civil RICO claim. In fact, the RICO statute, itself, provides that conduct relating to prior litigation may constitute racketeering activity. 18 U.S.C. § 1961(1)(B) (defining racketeering activity as including an act indictable under 18 U.S.C. § 1512, which relates to tampering with a witness, victim, or informant). Therefore, the district court erroneously determined that Plaintiffs' RICO claims, which are based on immune litigation conduct, fail as a matter of law.

*Id.* at 364-65.

In the present case, Plaintiff has alleged that Defendants' fraudulent omissions and intentional misrepresentations before the bankruptcy court are the predicate acts giving rise to RICO liability. Much like the defendant in *Living Designs*, Defendants here contend, without any legal support, that their statements are protected by the common law litigation privilege. The decision in *Living Designs*, which was premised on an identical factual background, compels this Court's conclusion that Defendants' declarations are subject to RICO liability.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 15-09699-RGK (FFMx)** | Date | March 2, 2016 |
|---|---|---|---|
| Title | *Moises Garcia Guillen v. Cornerstone Financial Services et al.* | | |

Overall, Plaintiff has sufficiently alleged four predicate acts of mail or wire fraud: the misrepresentation in the contract and the three misrepresentations made before the bankruptcy court. The allegations of fraud relating to the March 6 letter and the March 9 email are insufficient, as they fail to properly allege reliance.

### C.  Pattern

To demonstrate a pattern, Plaintiff must show either a "a series of related predicates extending over a substantial period of time" or "past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241-42. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Id.* at 242.

The Court first concludes that the predicate acts are sufficiently related. Racketeering acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *United States v. Bingham*, 653 F.3d 983, 992 (9th Cir. 2011). Admittedly, the first predicate act, which occurred in October 2012 when the contract was executed, was remote in time from the other three predicate acts, which occurred in 2015 during bankruptcy proceedings. All four acts, however, were intended to deprive Plaintiff of his bankruptcy rights, first by inducing him to enter into the contract and then by misrepresenting the nature of the truck sale before the bankruptcy court. Furthermore, the acts involved the same victim (Plaintiff), participants (Cornerstone), and method of commission (wire fraud).

While Plaintiff has alleged related acts, he has failed to plead continuity or threat of repetition. A plaintiff alleging a RICO violation may demonstrate a threat of continuing activity "by proving a series of related predicates extending over a substantial period of time." *H.J. Inc.,* 492 at 229. Continuity may be established by showing that the "predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.* Continuity may not be established by "conclusory allegations that other, unidentified" consumers "were affected by the alleged churning scheme." *Higgins v. Farr Financial Inc.*, 2009 WL 3517597, *3 (N.D. Cal. Oct. 26, 2009). Further, it cannot be established by "undifferentiated allegations that scores of consumers were defrauded as a result of the defendants' use of the mails." *Petri v. Gatlin*, 997 F. Supp. 956, 985 (N.D. Ill. 1997).

Here, the allegations of continuity are entirely conclusory. Plaintiff alleges that "Defendants specifically represented to Plaintiff's counsel that they have been conducting business this way for over 30 years." (Compl. ¶50, ECF No. 1.) Plaintiff, however, does not plead with particularity who made these statements, when they were made, and the context in which they were made. Without any other facts demonstrating that Defendants have in fact done this to other people, Plaintiff's allegations are insufficient to demonstrate a continuing threat.

Plaintiff also attempts to show continuity by alleging that his brother's vehicle represents another

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 15-09699-RGK (FFMx)** | Date | March 2, 2016 |
|---|---|---|---|
| Title | *Moises Garcia Guillen v. Cornerstone Financial Services et al.* | | |

example of Defendant's fraudulent scheme. The Complaint states that the brother's vehicle was "likely sold . . . in a similar wrongful fashion as Defendants did relative to Plaintiff's Truck." (Compl. ¶49, ECF. No 1.) Plaintiff does not allege with any certainty that his brother's truck suffered the same fate as his own vehicle. He does not claim that Cornerstone fraudulently induced his brother into a contract, sent his brother a fraudulent Bill of Sale, or otherwise interfered with his brother's bankruptcy rights. In fact, Plaintiff tacitly admits the conjectural nature of this allegation by alleging that Defendants "likely" disposed of his brother's vehicle in the same manner.

As it stands, the Complaint merely alleges an isolated incident of apparent fraud. In order to sufficiently plead a continuing threat, Plaintiff will need to allege, with particularly, more facts demonstrating that the Defendants were participating in this scheme over a substantial period of time.

### D. Proximate Cause

"When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). "Proximate cause for RICO purposes . . . should be evaluated in light of its common-law foundations; proximate cause thus requires some direct relation between the injury asserted and the injurious conduct alleged. A link that is too remote, purely contingent, or indirect is insufficient." *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) (citation omitted) (internal quotation marks omitted).

The Ninth Circuit has set forth three factors to consider in determining whether a causal chain in RICO claims is too attenuated: "(1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1147-48 (9th Cir. 2008). Stated more concisely, the RICO proximate cause factors are: "the directness of the injury, the speculative nature of the harm, and the risk of duplicative recovery and complexity of apportioning damages."*Ass'n of Washington Pub. Hosp. Districts v. Philip Morris Inc.*, 241 F.3d 696, 703 (9th Cir. 2001).

Here, Plaintiff alleges that Defendants' fraudulent scheme proximately caused the loss of his truck and business, loss of a lucrative load hauling contract, loss of his brother's truck, and severe emotional distress. (Compl. ¶43-47, 68, ECF No. 1.) The Court finds Plaintiff has failed to allege proximate cause.

First, emotional distress damages are not available under RICO. Such a rule comports entirely with RICO's purpose as a device to combat extortionate business practices. *Graf v. Peoples*, No. CV 07-4731, 2008 WL 4189657, at *8 (C.D. Cal. Sept. 4, 2008) ("Plaintiff's allegations of emotional distress

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 15-09699-RGK (FFMx)** | Date | March 2, 2016 |
|---|---|---|---|
| Title | *Moises Garcia Guillen v. Cornerstone Financial Services et al.* | | |

do not suffice; damages for emotional distress are not available under RICO.") (citing *Diaz v. Gates*, 420 F.3d 897, 899-90 (9th Cir. 2005)). Therefore, Plaintiff may not rely on the alleged emotional distress to satisfy the proximate cause requirement.

Next, any alleged harm to Plaintiff's brother's truck does not establish proximate cause. For starters, Plaintiff's brother is a "more direct victim who can be counted on to vindicate" his own rights; therefore, this theory of proximate cause runs afoul of the first limiting factor identified above: the directness of the injury. *Sybersound Records, Inc.*, 517 F.3d at 1147-48. In addition, this theory of proximate cause is entirely too attenuated. Plaintiff would have this Court impose liability because Defendants' fraud on a third party (the bankruptcy court) caused Plaintiff to lose his vehicle and that loss indirectly affected another vehicle owned by a fourth party (the brother). The Court refuses to contort the RICO statute to such proportions. *Hemi Grp., LLC*, 559 U.S. at 11 (refusing to "extend RICO liability to situations where the defendant's fraud on the third party . . . has made it easier for a *fourth* party [] to cause harm to the plaintiff") (alterations in the original).

Finally, as to the loss of his own vehicle and business, Plaintiff essentially avers that he would have been able to successfully structure a reorganization plan in Chapter 13 bankruptcy and salvage his collateral if Defendants had not deprived him of his bankruptcy rights by deceiving the court. When considering whether a RICO plaintiff has sufficiently alleged proximate cause, "[o]ne motivating principle is the difficulty that can arise when a court attempts to ascertain the damages caused by some remote action." *Anza*, 547 U.S. at 458. In the same vein, one of the proximate cause factors articulated by the Ninth Circuit is "whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct." *Sybersound Records, Inc.*, 517 F.3d at 1147-48.

In the present case, Plaintiff has failed to adequately allege proximate cause. While Defendants' alleged misconduct supposedly prevented Plaintiff from proceeding with his Chapter 13 bankruptcy, it remains to be seen whether, in the absence of such alleged interference, Plaintiff could have successfully structured a reorganization plan and retained his vehicle. As currently pled, Plaintiff's RICO claim suffers from a glaring gap in the causal chain because he has not alleged sufficient facts to demonstrate that Defendants' fraud directly caused his loss. Therefore, proximate cause is not satisfied. *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 269 (1992) ("[T]he less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors.").

### E.     Supplemental Jurisdiction

Plaintiff's RICO claim provides the only basis for federal subject matter jurisdiction. Because the Court has dismissed Plaintiff's RICO claim, it declines to exercise supplemental jurisdiction over the remaining state law claims. The Court dismisses without prejudice all remaining state law claims. *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1101 (9th Cir. 1996) ("Where a district court dismisses a federal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 15-09699-RGK (FFMx)** | Date | March 2, 2016 |
|---|---|---|---|
| Title | *Moises Garcia Guillen v. Cornerstone Financial Services et al.* | | |

claim, leaving only state claims for resolution, it should decline jurisdiction over the state claims and dismiss them without prejudice.").

**V.      CONCLUSION**

In light of the foregoing, both motions to dismiss are **GRANTED**.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | AH |